Jo ALLEN, d/b/a/ Automatic Business Systems, Plaintiff,

v.

TOSHIBA CORPORATION, et al., Defendants.

No. CIV–81–994 C.

United States District Court, D. New Mexico.

June 15, 1984.

---

George M. Moore, Albuquerque, N.M., for plaintiff.

John J. Witmeyer, III and Michael L. Anania, Ford, Marrin, Esposito & Witmeyer, New York City, Civerolo, Hansen & Wolf, P.A., Richard Civerolo, Kathy Levy, Albuquerque, N.M. for Toshiba.

Gregory D. Huffaker, Jr., Poole, Tinnin & Martin, Albuquerque, N.M., J. William Hayton, Bell, Boyd & Lloyd, Chicago, Ill., for Underwriters' Laboratories.

## MEMORANDUM OPINION AND ORDER

CAMPOS, District Judge.

This matter comes before the Court on three Motions to Dismiss filed separately by the various Defendants. The Plaintiff has also filed a Motion to Strike Affidavits as a partial response to the Defendants' legal arguments. The Court has considered the parties' memoranda, reviewed the materials accompanying the Motions,[1] and examined the legal authority which is germane to the issues. It is the Court's conclusion that the Defendants' Motions are, for the most part, well taken and the relief which has been requested should be substantially granted.

This case arises from the dissolution of a business relationship between the Plaintiff, Jo Allen d/b/a Automatic Business Systems ("ABS") and one of the Defendants, Toshiba America, Inc. ("TAI"). In 1977, the Plaintiff was appointed by TAI to be an authorized photocopier dealer in Albuquerque, New Mexico. The Plaintiff purchased photocopies and reprographic materials from TAI. TAI purchased the photocopi-

---

1. The Affidavits and accompanying materials have been considered only in connection with the question of personal jurisdiction. Since there is no statutory mode for the resolution of a motion raised pursuant to Fed.R.Civ.P. 12(b)(2), the Court is left free to formulate its own method for determination. *See Gibbs v. Buck,* 307 U.S. 66, 71–72, 59 S.Ct. 725, 728–29, 83 L.Ed. 1111 (1939); *Schramm v. Oakes,* 352 F.2d 143, 149 (10th Cir.1965). The Court finds that the affidavits and discovery materials submitted with the Motion constitute a sufficient basis for its conclusions. *See Simon v. United States,* 644 F.2d 490, 497 (5th Cir.1981) ("In resolving this issue [personal jurisdiction over the defendant], not only the well-pleaded allegations of the complaint may be considered, but also factual showings made by way of depositions, affidavits, and exhibits adduced in the trial of the issue.")

ers[2] from the manufacturer, the Defendant Toshiba Corporation ("Toshiba"). These purchases were transacted in Japan. TAI is a wholly owned subsidiary of Toshiba.

ABS continued doing business as a TAI dealership through 1978, 1979, and 1980. The Plaintiff offered various models of photocopiers to its customers. It is alleged that the Toshibafax copiers, by reason of defective design and manufacture, developed serious mechanical problems, that they "had a tendency to catch on fire and emit smoke" and further "made poor quality copies." *Civil Complaint,* Second Cause of Action, ¶ VI. The Plaintiff claims that "[t]he defects in the machines severely and substantially impaired their value to Allen inasmuch as Allen was in the business of selling photocopy machines to business customers." *Id.,* Twelfth Cause of Action, ¶ VI. The defects, together with various other "problems" allegedly encountered in the use of the copy machines,[3] constitute the core of the Plaintiff's claims for breach of warranties, fraudulent misrepresentations, and various torts brought under products liability theories.

The Plaintiff derives, from this fact pattern, twelve causes of action which are as follows: (1) breach of contract; (2) intentional faulty design, manufacture, assembly and testing; (3) negligent design, manufacture, assembly and testing; (4) breach of express warranty; (5) breach of implied warranty of fitness for purpose; (6) breach of implied warranty for merchantability; (7) negligent failure to warn; (8) action for fraudulent misrepresentation; (9) action for fraud in non-disclosures of material facts; (10) action for deceit in conduct, transactions and operations; (11) negligent misrepresentation; and (12) commercial revocation of previous agreements and obli-

gations. The Defendants have moved to dismiss all of the claims.

The Complaint also joins as party Defendants Sidney Reisch and Underwriters Laboratories, Inc. The Defendant Underwriters is a Delaware corporation with its principal place of business in Illinois. It is alleged that Underwriters was responsible for the testing and evaluation of Toshibafax photocopiers. The Defendant Reisch is an employee of TAI who was formerly national sales manager of the business equipment division, copier operations, and is presently the vice president and general manager of the copier products division. Reisch is sued individually for alleged acts committed in his corporate capacity.

■ The Defendant Reisch has filed a Motion to Dismiss asserting the Court's lack of personal jurisdiction over him for this action. The uncontroverted affidavit of Mr. Reisch avers that he has never been a resident of New Mexico, that he has never owned real property within the state, that he derives no personal income from New Mexico, that any business transactions with the Plaintiff were conducted solely within the scope of his employment with TAI, and finally that he owns no stock in either TAI or Toshiba. Mr. Reisch's affidavit is supported by the allegations concerning his activities, found in the Complaint.

The Complaint alleges as pertinent to this Defendant that:

Defendant Sid Reisch ("Reisch") is a citizen of the United States, residing in the State of California, and was and is at all times material to these pleadings, at first National Sales Manager of TAI and subsequently its Vice-President. *In those capacities* he was and is at all

---

**2.** The particular models involved in this dispute are the Models BD 601, BD 702A, BD 707, BD 728, and BD 909 Toshibafax photocopy machines.

**3.** For example, the Plaintiff claims that "the repair frequency was high;" "replacement parts were not readily available;" "the cost of maintenance and supplies was inordinate as the ma-

chines did not perform adequately;" "the paper-feed system was not excellent;" and "the copy machines experienced frequent paper jams." *Civil Complaint,* Eighth Cause of Action, ¶ V. These allegations relate to the misrepresentation claims, but also indicate an aspect of the Plaintiff's dissatisfaction with the performance of the copiers.

times material to this action transacting business and contracting to supply goods and manufactured products within the State of New Mexico. Defendant Reisch, at all times which are material to these pleadings derived and still continues to derive substantial compensation from the sales of goods and manufactured products sold and used within the State of New Mexico.

*Civil Complaint,* First Cause of Action, ¶ VI (emphasis added). The Complaint also alleges that "the Defendants and each of them were at all times herein mentioned, agents of each of the remaining Defendants *and were at all times herein mentioned acting within the scope and agency of said employment." Id.* at ¶ X (emphasis added). These two references, aside from the general allegations, constitute the sum total of the specific allegations concerning Mr. Reisch.[4] Thus, it can safely be said that Reisch's contacts with New Mexico, if any, were purely in a corporate capacity, that there is neither allegation nor indication that he performed any commercial acts of a personal nature outside the scope of his employment.

The Tenth Circuit has recognized, as an equitable principle, what has come to be known as the fiduciary or corporate shield doctrine. *See Wilshire Oil Co. v. Riffe,* 409 F.2d 1277, 1281–82 (10th Cir.1969). *See also Segil v. Gloria Marshall Management Co.,* 568 F.Supp. 915, 918 (D. Utah 1983). A succinct statement of the rule was recently formulated by the Second Circuit.

> [I]f an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct. Thus, his conduct, although it may subject him to personal liability, may not form the predicate for the exercise of jurisdiction over him as an individual.

*Marine Midland Bank v. Miller,* 664 F.2d 899, 902 (2d Cir.1981); *See also Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 906 (1st Cir.1980) ("The general rule is that jurisdiction over the individual officers of a corporation may not be based merely on jurisdiction over the corporation."); *Bloom v. A.H. Pond Co.,* 519 F.Supp. 1162, 1170 (S.D.Fla.1981); *Quinto v. Legal Times of Washington, Inc.,* 506 F.Supp. 554, 558 (D.D.C.1981); *PSC Professional Services Group, Inc. v. American Digital Systems,* 555 F.Supp. 788, 791 n. 5 (E.D.Pa.1983); *Quinn v. Bowmar Publishing Co.,* 445 F.Supp. 780, 786 (D.Md.1978); *but see Columbia Briargate Co. v. First National Bank,* 713 F.2d 1052, 1058–61 (4th Cir.1983). The equitable rationale which underlies the doctrine is that "it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Marine Midland Bank v. Miller,* 664 F.2d at 902.

In the present case, there are no allegations to tie Reisch to this forum in a personal capacity. It is uncontroverted that what contacts he may have had with New Mexico related solely to his position with TAI and were conducted entirely within the province of his employment. Under these circumstances and in light of the law of this circuit, the exercise of personal jurisdiction over this Defendant would stretch beyond the bounds of due process. The Defendant Reisch's motion to dismiss will be granted.

■ TAI has moved to dismiss, *inter alia,* the Second, Third, and Seventh Causes of Action on the basis that tort theories of liability may not be utilized to recover for purely economic injury. This question of substantive law is, of course, to be resolved by recourse to the law of New Mexico. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct.

---

**4.** Although presented with every opportunity by the Court to supplement the Complaint with additional allegations gleaned from discovery, the Plaintiff has done nothing.

1136, 14 L.Ed.2d 8 (1965). As the Tenth Circuit has noted, " '[t]he responsibility of federal courts in matters of local law is not to formulate the legal mind of the state, but merely to ascertain and apply it.' *Yoder v. Nu-Enamel Corp.*, 117 F.2d 488, 489 (8th Cir.)." *Hardy Salt Co. v. Southern Pacific Transportation Co.*, 501 F.2d 1156, 1163 (10th Cir.1974).

The New Mexico appellate courts have not addressed the issue. This district has, however, predicted that New Mexico would follow the majority rule and would not allow recovery for purely economic loss under a theory of strict liability. *See Garrett v. Joan of Arc Co.*, Civ. No. 80–344–HB, slip op. at 2–3 (D.N.M. January 24, 1983). The Defendants would have this Court dismiss those causes of action which sound in tort, resonating both in negligence and strict products liability.

The central dichotomy between those courts which have permitted recovery in tort for economic injury and those which have not may be traced to two seminal cases decided in 1965. The Supreme Court of New Jersey opined in *Santor v. A and M Karagheusian*, 207 A.2d 305 (N.J.1965) that a cause of action under strict liability could be utilized to recover economic losses. The Supreme Court of California rejected this position several months later in the landmark decision of *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (Cal.1965). The heart of the opinion is Chief Justice Traynor's analysis of the relationship between the laws of contract and tort.

> The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. *Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone.*

*Id.* 45 Cal.Rptr. 17, at 151–152 (emphasis added). By far, the majority of courts have followed *Seely* and held that economic losses are not recoverable under theories of recovery based on the law of torts. *See Jones & Laughlin Steel v. Johns-Manville Sales Corp.*, 626 F.2d 280, 287 n. 13 (3d Cir.1980) (collecting the cases and jurisdictions which have followed *Seely* ). *See also Bright v. Goodyear Tire & Rubber Co.*, 463 F.2d 240, 242 (9th Cir.1972).

This case involves the recovery of business losses, an economic injury which is unrelated to any claim of personal, that is physical injury suffered by the Plaintiff. Indeed, there is no claim that the Plaintiff has suffered any physical injury. Absent some contrary indication from the appellate courts of New Mexico, this Court will not extend tort theories of liability into the economic losses. The better-reasoned authority and the vast majority of cases which have addressed the issue stand firmly against the proposition. Therefore, the Second, Third, and Seventh Causes of Action will be dismissed.

■ The Defendant Toshiba has filed a Motion to Dismiss which is based upon an alleged absence of personal jurisdiction. There is no dispute that TAI has submitted itself to the jurisdiction of New Mexico's

courts.[5] As previously noted, TAI is a wholly-owned subsidiary of Toshiba, the parent corporation.[6] Even in the absence of direct contacts between Toshiba and this forum, personal jurisdiction may, nevertheless, be acquired through the subsidiary where the relationship between the parent and the subsidiary is one of agency or where the subsidiary is merely an alter ego of the parent. *See generally*, R. Casad, Jurisdiction in Civil Cases ¶ 3.02[2][b][ix] at 3–83 to 3–88 (1983); 2 J. Moore, J. Lucas, H. Fink, & H. Thompson, Moore's Federal Practice ¶ 4.25[6] at 4–270 to 479 (2d ed. 1984).

At the outset it is necessary to address the Motion to Strike Affidavits filed by the Plaintiff. The Motion seeks to strike the affidavits of Sidney Reisch and Toshimitsu Kitagawa, filed by Toshiba in support of its jurisdictional motion to dismiss, for an alleged failure to comply with Fed.R.Civ.P. 56(e). The Rule provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

The Tenth Circuit has held, in the context of a motion for summary judgment, that "generalized, conclusionary [sic], unsubstantiated, non-personal affidavits are insufficient to successfully oppose a motion for summary judgment." *Stevens v. Barnard*, 512 F.2d 876, 879 (10th Cir.1975). To this may be added that the affiant's competence must appear affirmatively in the affidavit. *See F.S. Bowen Electric Co. v. J.D. Hedin Construction Co.*, 316 F.2d 362, 364 (D.C.Cir.1963). The affidavits at issue are sufficient, in light of these standards, to present a challenge to the allegations contained in the Complaint. The competence of the affiants is affirmatively stated [7] and their averments are specific and non-conclusional.

The jurisdictional "facts," [8] upon which this Court's decision must be based, reveal that Toshiba is not licensed to do business in New Mexico, does not own or lease any real property within the state, and maintains no bank accounts, offices, employees, or places for the regular conduct of business in New Mexico. *Kitagawa Affidavit* ¶¶ 2, 3, 4, 5. Toshiba, as a business entity, has not engaged in any transactions with ABS. *Id.* ¶ 6. The Plaintiff states that "[a]lthough at all times the marketing rep-

---

**5.** It is, of course, beyond contravention that "[i]n diversity suits ... a federal court can obtain personal jurisdiction over nonresidents by complying with the long-arm statute of the state in which it sits." *Wilshire Oil Co. of Texas v. Riffe*, 409 F.2d 1277, 1279 n. 1 (10th Cir.1969); *See also Premier Corp. v. Newsom*, 620 F.2d 219, 221–22 (10th Cir.1980). At the time this suit was filed Fed.R.Civ.P. 4(d)(7) provided that "it is also sufficient if the summons and complaint are served in the manner prescribed by ... the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state." The 1983 Amendments to Rule 4 eliminated this provision. *See generally* 2 J. Moore, J. Lucas, H. Fink, & C. Thompson, Moore's Federal Practice ¶ 4.08[3] at 4–99 (1984). Fed.R.Civ.P. 4(c)(2)(C)(i), which replaces Rule 4(d)(7), now provides that "[a] summons and complaint may be served upon a defendant of any class referred to in paragraph (1) or (3) of subdivision (d) of this rule—
  (i) pursuant to the law of the State in which the district court is held for the service of summons or other like process upon such defendant

in an action brought in the courts of general jurisdiction of that State."

**6.** For a discussion of the hierarchical character of Japanese economic organization and an interesting observation concerning the cultural-linguistic reflection of this hierarchy as it pertains to Japanese companies, *see Bulova Watch Co. v. K. Hattori & Co., Ltd.*, 508 F.Supp. 1322, 1339 (E.D.N.Y.1981).

**7.** Mr. Kitagawa is the Manager, Legal Staff, Administration Division of Toshiba Corporation and would be competent to testify as to the corporate structure of Toshiba.

**8.** Since the well-pleaded allegations in the Complaint are, for the purposes of a motion to dismiss, regarded as true, certain "facts" for jurisdictional purposes may or may not constitute evidentiary facts. This is the case at least insofar as the allegations are uncontroverted by the non-movant's affidavits. *See Black v. Acme Markets, Inc.*, 564 F.2d 681, 683 n. 3 (5th Cir. 1977).

resentative was indicated as Toshiba America, Inc. I understood I was dealing with Toshiba Corporation because of the various and sundry documents which were furnished me." *Jo Allen Affidavit* ¶ 3. There is no question that Toshiba was the manufacturer of the photocopiers which were marketed by TAI. Many of the "documents" to which the Affidavit refers are concerned with the specifications for the various machines. The Plaintiff also asserts that "whenever I dealt with any representative of Toshiba America, Inc., I was made to understand that all direction and all activity for control of Toshiba sales, including the models that would be marketed in the United States, the price to be charged by TAI, the suggested list price for dealers and all other aspects of the product were established in Japan and not in the United States." *Id.* ¶ 8.

The Complaint alleges that at all times TAI was "acting as the agent for Defendant Toshiba Corporation." *Civil Complaint*, First Cause of Action ¶ XI. This allegation is controverted by opposing affidavit. *Sidney Reisch Affidavit*, February 1, 1982, ¶ 6. TAI is a wholly owned subsidiary of Toshiba, but TAI's management is separate and independent, TAI is separately incorporated, and Toshiba has no control over the internal affairs and daily operational management of TAI. *Id.* ¶ 6; *Kitagawa Affidavit* ¶ 8. Toshiba also avers that the two corporations have "separate directors and officers, keep separate corporate records, file separate tax returns, and have separate accountants." *Id.* ¶ 7; *Kitagawa Affidavit* ¶ 9. This statement of the interrelationships between Toshiba, TAI, the Plaintiff and New Mexico constitutes the factual core of the jurisdictional issue.[9]

The existence *vel non* of jurisdiction *in personam* is analyzed under state law in suits brought under the federal grant of diversity jurisdiction. *See Quarles v. Fu-*

*qua Industries,* 504 F.2d 1358, 1361 (10th Cir.1974); *Wilshire Oil Co. v. Riffe,* 409 F.2d at 1280 n. 4; *Leney v. Plum Grove Bank,* 670 F.2d 878, 879 (10th Cir.1982); *O'Hare International Bank v. Hampton,* 437 F.2d 1173, 1175 (7th Cir.1971). Where the alleged jurisdictional basis is controverted, the Plaintiff must sustain the burden of proof on the jurisdictional issue. *See State, ex rel. Anaya v. Columbia Research Corp.,* 92 N.M. 104, 105, 583 P.2d 468 (1978); *Aetna Casualty and Surety Co. v. Bendix Control Division,* 101 N.M. 235, 680 P.2d 616, 23 S.B.B. 576, 578 (Ct.App.1984); *See also Forsythe v. Overmyer,* 576 F.2d 779, 781 (9th Cir. 1978); *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d at 904 (1st Cir.1980); *Hoffman v. United Telecommunications, Inc.,* 575 F.Supp. 1463, 1469 (D.Kan.1983). The question thus becomes whether the Plaintiff has sustained this burden under New Mexico law and under the federal due process "minimum contacts" requirement.

Personal jurisdiction over Toshiba is founded upon the New Mexico Long Arm Statute.

A. Any person, whether or not a citizen or resident of this State, who ... does any of the acts enumerated in this subsection thereby submits himself ... to the jurisdiction of the courts of this State as to any cause of action arising from:

(1) the transaction of any business within this state; ...

(3) the commission of a tortious act within this state; ...

B. Service of process may be made upon any person subject to the jurisdiction of the courts of this State under this section by personally serving the summons upon the defendant outside this State and such service has the same force and effect as though service had been personally made within this State.

---

9. The Court has been solicitous, perhaps overly so, of the difficulty a Plaintiff may encounter in establishing a jurisdictional nexus between a parent and subsidiary. The Plaintiff in this case has had an extended period of time to engage in discovery which could supplement the present record. Plaintiff's counsel has been invited to supplement his jurisdictional arguments and to adduce additional facts for the Court's consideration. No supplementation has been forthcoming.

C. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction is based upon this section.

N.M.Stat.Ann. § 38–1–16 (1978). The inquiry into the presence of personal jurisdiction under a state long-arm statute is bipartite. The Fifth Circuit has offered a succinct statement of the analysis.

In deciding whether the state jurisdictional statute confers jurisdiction over a nonresident defendant in a diversity suit, it must be determined that (1) the defendant is in fact amenable to service under the statute (state law of the forum controls this question), and (2) if the state statute has been complied with, then federal law must be applied to determine whether assertion of jurisdiction over the defendant comports with due process.

*Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1159 (5th Cir.1983) (quoting *Walker v. Newgent,* 583 F.2d 163, 166 (5th Cir. 1978)); *See also Leney v. Plum Grove Bank,* 670 F.2d at 879.

The Court has already ruled that those causes of action framed by the law of torts are not cognizable in New Mexico. Therefore, if the Plaintiff is to bring Toshiba within the ambit of the New Mexico long-arm statute, jurisdiction must be predicated upon Section 38–1–16(A)(1), "the transaction of any business within the state" provision.

New Mexico has extended the reach of § 38–1–16(A)(1) to the limit of due process permitted by the Constitution. *See United Nuclear Corp. v. General Atomic Co.,* 91 N.M. 41, 42 (1977). The question thus becomes whether, to employ the well-worn shibboleths of personal jurisdiction, there exist such minimum contacts, as reflected by the nature and quality of the defendant's intra-forum acts, that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342,

85 L.Ed. 278 (1940)); *See also Helicopteros Nacionales de Colombia v. Hall,* —— U.S. ——, ——, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc.,* —— U.S. ——, ——, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977).

There is no talisman or rote incantation which unlocks the jurisdictional door for suits against non-resident defendants. This is especially true in the area of complex corporate relationships. As perceptively noted by one court:

It would be helpful were the law to provide some grand jurisdictional ledger sheets upon which formal points such as these [minimum contacts] could be assigned weight and totted up. That is not possible in our real world where so much depends on nuances, on a sense of interrelationships and on a realistic appraisal of subtle economic and power connections.

*Bulova Watch Co. v. K. Hattori & Co., Ltd.,* 508 F.Supp. at 1340. In determining the true commercial nexus between the forum and a corporate defendant, "realism, not formalism, should be dominant; the problem must be solved in the light of commercial actuality, not in the aura of juristic semantics." *Echeverry v. Kellogg Switchboard & Supply Co.,* 175 F.2d 900, 903 (2d Cir.1949). "[T]he 'minimum contacts' test of *International Shoe* is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Kulko v. California Superior Court,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978) (citing *Hansen v. Denckla,* 357 U.S. 235, 246, 78 S.Ct. 1228, 1235, 2 L.Ed.2d 1283 (1958); *See also Shanks v. Westland Equipment & Supply Co.,* 668 F.2d 1165, 1166 (10th Cir.1982); *Premier Corp. v. Newsom,* 620 F.2d at 222.

In the case at bar Toshiba's contacts are virtually nonexistent.[10] Therefore, the jurisdictional issue hinges upon the relationship between Toshiba and its subsidiary, TAI. An initial framework for the discussion which follows is provided by the *Restatement*.

Judicial jurisdiction over a subsidiary corporation does not of itself give a state judicial jurisdiction over the parent corporation. This is true even though the parent owns all of the subsidiary's stock. So a state does not have judicial jurisdiction over a parent corporation merely because a subsidiary of the parent does business within its territory.

If the subsidiary corporation does an act, or causes effects, in the state at the direction of the parent corporation or in the course of the parent corporation's business, the state has judicial jurisdiction over the parent to the same extent that it would have had such jurisdiction if the parent had itself done the act or caused the effects.

Judicial jurisdiction over a subsidiary corporation will likewise give the state judicial jurisdiction over the parent corporation if the parent so controls and dominates the subsidiary as in effect to disregard the latter's independent corporate existence.

\* \* \* \* \* \*

Even in the absence of a stock relationship between a local and a foreign corporation, jurisdiction over the foreign corporation has sometimes been exercised on the basis of activities that the local corporation has conducted in the state as the agent of the foreign corporation. The existence of an agency relationship may be found when the foreign corporation consigns goods to the local corporation and exercises control over the latter with respect to price, merchandising or advertising.

*Restatement (Second) of Conflicts of Laws* § 52 Comment b (1971). *See also* 2 Moore's Federal Practice, *supra*, ¶ 4.25[b] at 4–272. Thus, the nature of the relationship between the parent and the subsidiary is the critical point of inquiry; for it will determine whether acts of the subsidiary may be imputed to the parent for the purpose of establishing personal jurisdiction.

The general rule, as suggested by the *Restatement* is that "a foreign corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere

---

**10.** The Court rejects a second theory proffered by the Plaintiff which is premised upon the placement, by Toshiba, of the photocopiers into the stream of commerce. "The stream-of-commerce theory developed as a means of sustaining jurisdiction in products liability cases in which the product had traveled through an extensive chain of distribution before reaching the ultimate consumer." *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 285 (3d Cir.1981). The seminal case in this area, *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761 (Ill.1961), arose in the context of products liability. Recently, the New Mexico Court of Appeals read the long-arm statute's "commission of a tortious act within this state" provision to include "negligent acts which occur outside New Mexico which cause injury within New Mexico." *Roberts v. Piper Aircraft Corp.*, 100 N.M. 363, 366, 670 P.2d 974, 977 (Ct.App.1983). The limitation of the stream of commerce theory to those cases where tortious conduct forms the basis for the claim is sound. In the context of purely economic losses resulting from unhappy business relationships it is even less appropriate, than in the case of personal injuries, for a "seller of chattels ... [to] appoint the chattel his agent for service of process." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980). The stream of commerce theory is, to some extent, predicated upon the foreseeability that a product, once marketed, may cause *personal injury* in a distant forum. As the Supreme Court has noted, however, "the foreseeability that is critical to the due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567 (citations omitted). This Court will not extend the rationale of *Gray* beyond the context of a tort claim for personal injury. *See H. Ray Baker, Inc. v. Associated Banking Corp.*, 592 F.2d 550, 555 (9th Cir.1979); *Cf. Iowa Electric Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1306 (8th Cir.1979); *but cf. Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors*, 647 F.2d 200 (D.C.Cir.1981).

**390**

existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir.1983); *See also Quarles v. Fuqua Industries, Inc.*, 504 F.2d 1358, 1362 (10th Cir.1974); *Ryder Truck Rental v. Acton Foodservices Corp.*, 554 F.Supp. 277, 279 (C.D.Cal.1983). This is true even where the parent is the sole owner of the subsidiary. *See Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d at 905. The rule stems from the venerable opinion of Justice Brandeis in *Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925).[11]

It is incumbent upon the Plaintiff to overcome the presumption of corporate separateness either by establishing an agency relationship, *see Kramer Motors, Inc. v. British Leyland Ltd.*, 628 F.2d 1175, 1177 (9th Cir.1980), or by "clear evidence that the parent in fact controls the activities of the subsidiary." *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d at 905; *see also Hargrave v. Fibreboard Corp.*, 710 F.2d at 1161 (subsidiary the "alter-ego" of the parent); *Quarles v. Fuqua Industries, Inc.*, 504 F.2d at 1362 ("alter-ego" theory); *cf. O.S.C. Corp. v. Toshiba America, Inc.*, 491 F.2d 1064, 1067 (9th Cir.1974). These are the general principles which must illuminate the case at bar.

The law of New Mexico controls the issue of corporate domination. *See Quarles v. Fuqua*, 504 F.2d at 1362; *Hargrave v. Fibreboard Corp.*, 710 F.2d at 1161. The recent case of *Cruttenden v. Mantura*, 97 N.M. 432, 640 P.2d 932 (1982), discusses under what circumstances a subsidiary is merely an "alter ego" of the parent. In the *Mantura* case, the Supreme Court of

New Mexico reversed an order which held Marriott Corporation liable for the debts of its wholly-owned subsidiary Marriott International Corporation. The plaintiff (Cruttenden) was the successor, through garnishment, to Mantura's rights against Marriott International Corporation. Mantura had a contract with Marriott Corporation which Marriott Corporation later assigned to Marriott International Corporation when the latter was formed. Marriott Corporation formed Marriott International Corporation to handle Marriott Corporation's overseas activities. Marriott Corporation had given to Marriott International Corporation all of the latter's assets (i.e., Marriott Corporation's overseas business). According to the trial court, this established that Marriott International Corporation was under the sole and direct control of Marriott Corporation, and the two would be considered indivisible and identical. Thus, according to the trial court, Marriott Corporation was responsible for Marriott International Corporation's obligations to Mantura and, in turn, to Cruttenden.

The Supreme Court of New Mexico reversed, holding that there was an insufficient factual showing that Marriott International Corporation could be considered the "alter-ego" of Marriott Corporation. The court noted that "[t]o find that a subsidiary is the alter ego of the parent corporation, it must be established that the parent control is so complete as to render the subsidiary an instrumentality of the parent." *Cruttenden v. Mantura*, 97 N.M. at 434, 640 P.2d 932 (citing *Edgar v. Fred Jones Lincoln Mercury*, 524 F.2d 162, 166 (10th Cir.1975)).[12] The *Mantura* court proceeded to list ten factors, drawn from *Fish v. East*, 114 F.2d 177, 191 (10th Cir.1940), which the trial court should "consider in

**11.** As one court has noted, "*Cannon* ... stands for the proposition that so long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other." *Hargrave v. Fibreboard Corp.*, 710 F.2d at 1160.

**12.** The court also noted that "if sufficient separateness between a parent corporation and a subsidiary is maintained, service on the parent

corporation does not subject the subsidiary corporation to local jurisdiction." *Cruttenden v. Mantura*, 97 N.M. at 434, 640 P.2d 932 (citing *State v. MacPherson*, 62 N.M. 308, 309, 309 P.2d 981 (1957)). The court's analysis is equally applicable to the present case where service upon the subsidiary, valid because of the subsidiary's contacts, is used to assert jurisdiction over the parent.

determining whether or not to recognize the corporations as separate entities." *Cruttenden v. Mantura,* 97 N.M. at 435, 640 P.2d 932.

Some guidelines to be followed in determining if the alter ego theory is appropriate are, whether:

"(1) The parent corporation owns all or majority of the capital stock of the subsidiary.

(2) The parent and subsidiary corporations have common directors or officers.

(3) The parent corporation finances the subsidiary.

(4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation.

(5) The subsidiary has grossly inadequate capital.

(6) The parent corporation pays the salaries or expenses or losses of the subsidiary.

(7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation.

(8) In the papers of the parent corporation, and in the statements of its officers, 'the subsidiary' is referred to as such or as a department or division.

(9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation.

(10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed."

*Id.* at 434–35, 640 P.2d 932.

The Court has considered these factors in relation to the facts presently before it. The separation between Toshiba and TAI, though perhaps merely formal, is not fictional, but rather is merely part of a corporate reality. *See Cannon Manufacturing Co. v. Cudahy Co.,* 267 U.S. at 337, 45 S.Ct. at 251. The record indicates that TAI and Toshiba have separate directors and officers, that the two corporate entities are separately and independently managed, that the parent has no control over the internal affairs of the subsidiary, and that the corporate records and business management are distinct. There is no competent evidence before the Court that TAI is financed by Toshiba or is undercapitalized or that there is any "substantial intertwining" in their respective corporate affairs. *See Hargrave v. Fibreboard Corp.,* 710 F.2d at 1162. This Court, under the rigorous standard of *Mantura,* simply cannot conclude that TAI is the alter ego of Toshiba.

There are also certain allegations that Toshiba either controlled or participated in the foreign marketing of the photocopiers. As one court has observed, "[f]oreign-acts-with-forum-effects jurisdictional principle 'must be applied with caution, particularly in an international context.'" *Kramer Motors, Inc. v. British Leyland, Ltd.,* 628 F.2d at 1178 (quoting *Leasco Data Processing Equipment Corp. v. Maxwell,* 468 F.2d 1326, 1341 (2d Cir.1972)). *Kramer Motors* concerned an automobile dealer, Kramer Motors, that lost its supply of foreign automobiles after the United States importer subsidiary of the foreign corporation, which manufactured and marketed those automobiles, revised its marketing plan and cancelled the automobile dealer's dealership. *Id.* at 1176. The automobile dealer sued three British corporations: British Leyland International, Ltd. (BLIL) (the overseas marketer of British Leyland products), British Leyland Motor Corporation, Ltd. (BLMC) (a holding company within the British Leyland chain), and British Leyland Ltd. (BLL) (the top holding company for separate manufacturers and marketers of British Leyland Products). *Id.* at 1176 n. 2.

The Court of Appeals, in affirming the district court's dismissal for want of jurisdiction, as to all three defendants held that:

The record discloses no act by BLL or BLMC which gave rise to this cause of action. BLIL, however, did approve (an act) the marketing scheme which when implemented eventually caused Kramer to lose its supply of Triumph automobiles (the effect). BLIL and BLMI [the States

**392**

importer] obviously shared an interest in promoting British Leyland car sales. But the British parent's mere approval of a marketing scheme developed by its United States subsidiary does not constitute the kind of deliberate forum protection-involving act which the law requires. *Id.* at 1178. In short, even if the foreign manufacturer affirmatively approved a marketing effort by its American subsidiary, the manufacturer is still not subject to jurisdiction for the economic consequences caused by that decision.

Finally, the evidence does not establish an agency relationship. TAI, which purchased the photocopiers in Japan, was merely marketing the products in New Mexico. The "owner's manuals," pointed to by the Plaintiff, which were provided by TAI are merely explanations of the products which TAI was selling and ABS was purchasing. These and the other documents provided to ABS simply do not support the Plaintiff's conclusory statement that TAI was merely Toshiba's agent. The Plaintiff has failed to carry the burden of proof on an agency theory of personal jurisdiction.

As measured by the minimum contacts standard of due process the forum contacts of Toshiba are insufficient, as a matter of law, for this Court to exercise personal jurisdiction over a non-resident foreign corporation. The Court has considered the other issues raised by TAI in its Motion to Dismiss and finds that they should be denied.

IT IS, THEREFORE, ORDERED that the Motion to Dismiss filed by the Defendant Sidney Reisch shall be, and hereby is, granted.

IT IS FURTHER ORDERED that the Second, Third, and Seventh Causes of Action shall be, and hereby are, dismissed.

IT IS FURTHER ORDERED that the Motion to Dismiss filed by the Defendant Toshiba Corporation shall be, and hereby is, granted.