352 F.2d 143
 Raymond M. SCHRAMM and Diane Schramm, Appellants,
v.
Stanley OAKES, Midtown Motors, Inc., Cooper Oldsmobile,
Inc., and Todkill Lincoln-Mercury, Inc., Appellees.
Pete V. DOMENICI as Administrator for C. M. Schramm, Appellant,
v.
Stanley OAKES, Midtown Motors, Inc., Cooper Oldsmobile,
Inc., and Todkill Lincoln-Mercury, Inc., Appellees.
 Nos. 8011, 8012.
 United States Court of Appeals Tenth Circuit.
 Sept. 16, 1965, Rehearing Denied Oct. 18, 1965.
 
 Pete V. Domenici, Albuquerque, N.M. (Gino J. Matteucci & Richard C. Civerolo, Albuquerque, N.M., on the brief), for appellants.
 Joseph B. Zucht, Albuquerque, N.M., for appellee, Todkill Lincoln -Mercury, Inc.
 Russell Moore, Alburquerque, N.M. (W. A. Keleher, A. H. McLeod and Michael L. Keleher, Albuquerque, N.M., on the brief), for appellees, Stanley Oakes and Midtown Motors, Inc.
 Gerald R. Cole, Albuquerque, N.M. (Botts, Botts & Mauney and Vance Mauney, Albuquerque, N.M., on the brief), for appellee, Cooper Oldsmobile, Inc.
 Before BREITENSTEIN, HILL and SETH, Circuit Judges.
 HILL, Circuit Judge.
 
 
 1
 This factually complicated case is here for a third time. On the first occasion we refused an interlocutory appeal under 28 U.S.C.A. 1292(b). When the case came up the second time, we were compelled to remand the same for lack of an appealable order.[1] At that time, we suggested a reconsideration of the order quashing service as to certain defendants in light of cited authorities. It is apparent that our suggestions were not followed as the appeal comes now, after a final judgment, from the order quashing service upon certain of the same original defendants. Because of the complicated facts a detailed statement of the case becomes a necessity.
 
 
 2
 In their second amended complaint,[2] appellants (plaintiffs below) Raymond M. and Diane Schramm, father and daughter, alleged that on or about August 31, 1958, they were driving in a car owned by Raymond M. Schramm on Highway 66 near Albuquerque, New Mexico, when an automobile driven by one of the defendants who is not an appellee here, Shukri 'M' El-Khatib, a citizen of Jordan, negligently collided with the automobile in which they were riding causing personal injuries to them and property damage to the automobile.[3] The following parties were joined as defendants, Murdock-Salyer Chevrolet Company, Red Gilmore, and Cooper Oldsmobile, Inc., (all residents of Oklahoma), Stanley Oakes, Midtown Motors, Inc., Garth Cameron, B. A. Todkill and Todkill Lincoln-Mercury, Inc., (all residents of Nevada), on the basis that Shukri 'M' El-Khatib was driving the vehicle involved in the collision as an employee, agent and chauffeur for the defendants, all of whom were owners of the automobile or had an interest therein. Appellants sought service of process on the out of state residents[4] through service on the Secretary of State of New Mexico, pursuant to 64-24-3 and 64-24-4, New Mexico Statutes Annotated, 1953.[5]
 
 
 3
 All of the appellees here and the other defendants except Shukri 'M' El-Khatib entered special appearances for the purpose of moving to quash the service of process on them on the grounds generally that Shukri 'M' El-Khatib was not their respective agent, employee or servant but an independent contractor and further that none of them were owners of the automobile which he was driving. Also accompanying Red Gilmore's motion to quash was Exhibit A, which is a copy of his agreement with Shukri 'M' El-Khatib concerning the transportation of the automobile which was involved in the collision.[6] Affidavits were filed by each of the defendants in support of the motions to quash. In addition, at appellant's request, depositions were taken of Stanley Oakes, B. A. Todkill, who was president of Todkill Lincoln-Mercury, Inc., and Shukri 'M' El-Khatib.[7] An affidavit by Stanley Oakes revealed the following. That formerly he was in the used car business in Nevada under the name of Midtown Motors, Inc., and Stan Oakes, but that prior to the date of the collision he sold his business to Bert Todkill and became employed by Todkill; that one Garth Cameron contacted Bert Todkill and requested that Todkill obtain a Chevrolet Station Wagon for Cameron to buy; that Todkill told Oakes to see if he could locate such a car for Cameron; that Oakes contacted Cooper Oldsmobile, Inc., in Yukon, Oklahoma, and was informed that it could obtain an automobile like the one sought by Oakes; that one Red Gilmore made all the necessary arrangements with Shukri 'M' El-Khatib to drive the car from Norman, Oklahoma, to Las Vegas, Nevada; and that Oakes was at all times in the employ of Todkill Lincoln-Mercury, Inc., and that Midtown Motors, Inc., had nothing to do with the transaction. In his deposition he admitted that Midtown Motors, Inc., is still in existence even though most, if not all, of its assets now belong to Todkill Lincoln-Mercury, Inc., and that he now works for that company managing the lot he used to own selling cars on a salary plus commission basis; that he merely told Cooper Oldsmobile, Inc., to ship the Chevrolet Station Wagon to Las Vegas and he gave no instructions on how to deliver it but only to get it to Todkill Lincoln-Mercury, Inc., in Las Vegas. He also said he paid for the wrecked automobile with a check drawn by Todkill Lincoln-Mercury, Inc., to either him or Midtown Motors, Inc., and that he executed an installment note for the amount of the automobile thereafter to Todkill Lincoln-Mercury, Inc.
 
 
 4
 B. A. Todkill by affidavit and deposition revealed that he was president of Todkill Lincoln-Mercury, Inc., in Las Vegas; that he never owned the 1958 Chevrolet Station Wagon that Shukri 'M' El-Khatib was driving; that he never had any dealings with Red Gilmore or Shukri 'M' El-Khatib; that the company hired Stanley Oakes; that the company was trying to procure an automobile for one Garth Cameron and that he was present when Oakes contacted Cooper Oldsmobile, Inc., in Oklahoma, but that he doesn't remember what type of arrangements were made for payment, etc.
 
 
 5
 In behalf of Cooper Oldsmobile, Inc., in Yukon, Oklahoma, the company's secretary-treasurer deposed that the corporate records showed that Shukri 'M' El-Khatib was never employed by the company; that there is no record of the company acquiring a 1958 Chevrolet Station Wagon. However, Jackie Cooper, who was president of Cooper Oldsmobile, Inc., deposed that he did receive a call from Stanley Oakes in behalf of Todkill Lincoln-Mercury, Inc., seeking a 1958 Chevrolet Station Wagon; that Cooper located such a vehicle at Murdock-Salyer Chevrolet Company in Norman, Oklahoma, and informed Oakes of this and that Oakes then ordered the automobile and directed Cooper to draw a draft for the purchase price on Todkill Lincoln-Mercury's bank in Las Vegas and to deliver the car to Todkill Lincoln-Mercury, Inc., in Las Vegas. Cooper then directed Murdock-Salyer Chevrolet Company to bill said automobile to one Garth Cameron and that it would be picked up at Murdock-Salyer's office. Cooper then telephoned Red Gilmore in Oklahoma City and directed him to deliver the automobile to Oakes in Las Vegas. A. F. Salyer for Murdock-Salyer Chevrolet stated in his affidavit that they were paid for the automobile in question by Cooper Oldsmobile, Inc., and that they released the automobile to one Red Gilmore at direction of Cooper Oldsmobile and further that they had no relationship with Shukri 'M' El-Khatib.
 
 
 6
 The trial judge found after examining the pleadings, exhibits, affidavits and depositions that Murdock-Salyer Chevrolet Company, Stanley Oakes, Midtown Motors, Inc., Garth Cameron, B. A. Todkill, Todkill Lincoln-Mercury, Inc., and Cooper Oldsmobile, Inc., were nonresidents of New Mexico and served with process out of state; that Red Gilmore was an independent contractor and was not the authorized employee, agent or chauffeur of any of the defendants; that the evidence may establish Shukri 'M' El-Khatib was the chauffeur, agent or employee of Red Gilmore; that Shukri 'M' El-Khatib did not operate the automobile as agent, employee or chauffeur of any of the other defendants nor with their permission; and that the motions of the defendants, other than Gilmore, to quash are granted and that the motion of Gilmore to quash is overruled. At this point the interlocutory appeal was attempted which we refused to take.
 
 
 7
 With most of the defendants no longer parties to the lawsuit by virtue of the court having granted their respective motions to quash service of process, the case proceeded to trial on the merits with Red Gilmore and Shukri 'M' El-Khatib as the only defendants. A jury found for the plaintiffs and awarded Raymond M. Schramm $30,000 and Diane Schramm $5,000 against the defendant Red Gilmore. A default judgment was taken against Shukri 'M' El-Khatib in the amount of $30,000 for Raymond M. Schramm and $5,000 for Diane Schramm. Thereafter, the plaintiffs appealed to this court, alleging it was error for the trial court to have quashed service of process on the defendants because the affidavits and depositions relied on to sustain the motions created issues of fact which were the same issues necessary to be decided on the merits. Furthermore, plaintiffs urged that even if a factual determination was then proper, the affidavits and depositions clearly brought the defendants within the New Mexico Non Resident Motorist Statute. This court, however, on appeal sustained a motion to dismiss the appeal because no final judgment had been entered disposing of the claim of the plaintiffs against such defendants, supra, note 1.
 
 
 8
 In light of the opinion by this court that the trial court reconsider its order on the motions to quash, the plaintiffs filed a motion requesting the trial court to do so. Thereafter, the trial judge notified the parties that 'I have concluded to leave matters exactly as they presently stand in the above cause.' The plaintiffs then filed a motion requesting the trial court to enter an order finalizing all matters theretofore ruled on, so that an appeal could be perfected.
 
 
 9
 Thereafter, in open court, the plaintiffs moved to dismiss with prejudice their causes of action against defendants Murdock-Salyer Chevrolet Company, Garth Cameron and B. A. Todkill individually for reasons other than any alleged defect of service of process, and elected to stand upon the service of process presently in effect against the defendants, Stanley Oakes, Midtown Motors, Inc., Todkill Lincoln-Mercury, Inc., and Cooper Oldsmobile, Inc., who are the appellees here. An order of dismissal was entered as to these four original defendants based on the previous ruling quashing service. From this final decree, the plaintiffs have appealed citing once again as error that: The trial court erred in quashing service of process and dismissing the complaint against the appellees here based on the pleadings, affidavits and depositions, since to do so the court made factual determinations which were the same as those required to decide the case on the merits and that even if the factual determination was proper at the time the affidavits and depositions clearly bring the appellees within the purview of the New Mexico Non Resident Motorist Statute.
 
 
 10
 Initially, we note appellees' contentions that the issues raised by appellants now should not be considered because they failed to timely present these issues to the trial court. They cite to us a recent case from this circuit, Occidental Petroleum Corporation v. Walker, 289 F.2d 1, where the court said at page 6, 'It is a well-recognized rule of frequent application that a party litigant may not sit quiet at the time action is taken in the trial court and then complain on appeal.' Rule 46 contemplates that a dissatisfied party make known to the trial court the action desired or his objection. The purpose for this rule is obviously to allow the trial court to reconsider his rulings so that the trial court may correct its own possible errors. See Fort Worth and Denver Railway Company v. Harris, 5th Cir., 230 F.2d 680. There can be no doubt that the trial court was aware of the contentions involved here. When on January 5, 1960, Judge Rogers granted appellees' motions to quash, he consented to an interlocutory appeal and the appellants attempted such appeal raising the issues now urged as error. Furthermore, when the case was appealed, this court in dismissing the appeal suggested to the trial court it reconsider its order on the motions to quash. We are satisfied that the trial court was aware of appellants' objections to its rulings.
 
 
 11
 Turning now to appellants' contentions, Rule 12(d) of the Federal Rules of Civil Procedure clearly contemplates a preliminary hearing and determination of jurisdictional issues in advance of trial unless the court defers such action until the time of trial. Furthermore, as there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court. Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111. Certainly the trial court may gather evidence on the question of jurisdiction by affidavits or otherwise in an effort to determine the facts as they exist, Wetmore v. Rymer, 169 U.S. 115, 18 S.Ct. 293, 42 L.Ed. 682 and KVOS, Inc. v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183, and based upon the evidence so obtained, decide the jurisdictional dispute before trial. One deviation from this procedure is in the case where the issue of jurisdiction is dependent upon a decision on the merits. Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209. In that circumstance, the trial court should determine jurisdiction by proceeding to a decision on the merits. The purpose of postponing a determination upon a jurisdictional question when it is tied to the actual merits of the case is to prevent a summary decision on the merits without the ordinary incidents of a trial including the right to jury. See E. g. Wade v. Rogala, 3rd Cir., 270 F.2d 280, and Fireman's Fund Ins. Co. v. Railway Express Agency, 6th Cir.,253 F.2d 780. We recognize that both these cases did not deal with the precise question of jurisdiction involved here but instead were concerned with the matter of jurisdictional amount necessary for a diversity suit. Yet we feel the principles to be applied in each instance are substantially similar.
 
 
 12
 In Moore's treatise on Federal Practice he states in Vol. II, 12.16 at page 2274, discussing Rule 12(d), 'The emphasis of (d) is in the direction of hearing such defenses prior to trial. Certainly it will be advisable generally to decide such defenses as lack of jurisdiction * * * of the person * * * promptly after they are raised, and not defer them to the trial. On the other hand, where determination of the defense will involve going into the merits, the question may well be reserved until trial.' (See also the comments and cases cited in the 1964 supplement). So too in Vol. IA, Barron & Holtzoff, Federal Practice and Procedure, 355, page 352, it is stated: 'Different questions of agency for a nonresident automobile owner and validity of service on a state officer may warrant postponement of determination of the validity of service of process until trial on the merits.'
 
 
 13
 The record before us is only fragmentary and leaves many questions either in doubt or unsettled. Too, the trial court in sustaining appellees' motions to quash, did not give us the basis of its conclusions. Based then on what we have, we are unable to say with any degree of legal certainty that the appellants could not make out a valid cause of action against one or more of the appellees. For instance, what was the relationship between Red Gilmore and the appellees here and particularly appellee Cooper Oldsmobile, Inc. If the appellants could establish that Gilmore was the servant or agent of one or more of these appellees, liability might be established. In Gilmore's affidavit he states, '* * * I was contacted by Cooper Motor Company * * * and requesed to furnish a driver for a 1958 Chevrolet Station Wagon to be taken to the Midtown Motors at Las Vegas, Nevada, * * *.' Jackie Cooper of Cooper Oldsmobile, Inc., stated in one of his affidavits that, 'Deponet then telephoned Red Gilmore * * * and directed him to deliver the automobile * * * to Stanley Oakes in Las Vegas, Nevada.' In Gilmore's contract with the driver, Shukri 'M' El-Khatib, supra, note 6, the heading lists Midtown Motors, Inc., as owner of the car and Red Gilmore's signature appears followed by the word agent in parenthesis. The evidence is as yet inconclusive as to who was the owner of the automobile at the time of the collision. H. K. Salyer, president of Murdock-Salyer Chevrolet Company, stated in his affidavit that his company was paid for the automobile on August 30, 1958, by Cooper Oldsmobile, Inc. Cooper Oldsmobile, Inc., was not paid until after the collision and then by a check made by Todkill Lincoln-Mercury, Inc., to Stanley Oakes, which he endorsed to Cooper Oldsmobile, Inc.
 
 
 14
 It also appears that a caravan permit was required in taking the car through the State of New Mexico but no evidence was clear concerning in whose name the permit was issued. From this it may be possible that the owner would be liable for acts even of an independent contractor where the independent contractor operates a vehicle under a highway permit or franchise granted the owner. See 8 Am.Jur., 2d 577.
 
 
 15
 While this is not meant to be an exhaustive review of the facts which might subject appellees to service of process, it does clearly show that the possibilities exist. At least this is the type of case where appellants should have the opportunity of proving jurisdiction during the trial on the merits and not be cut off at a preliminary hearing.
 
 
 16
 Reversed and remanded with directions to proceed in accordance with the views expressed herein.
 
 ON PETITION FOR REHEARING
 
 17
 PER CURIAM.
 
 
 18
 Appellee, Todkill Lincoln-Mercury, Inc., has filed a petition for rehearing and raises on appeal the affirmative defense of res judicata or collateral estoppel. The same issue was raised by its separate brief filed before argument and the issue was not given consideration in the opinion because we deemed it to be improperly raised. The defenses of res judicata and collateral estoppel are affirmative defenses, must be raised as such on the trial level and cannot be raised for the first time upon appeal. We do not express any views as to the merits of these defenses as applied to this case because that is the function, in the first instance, of the trial court after such defenses have been properly raised by adequate pleadings.
 
 
 19
 The petition for rehearing is denied.
 
 
 
 [1]
 Schramm v. Murdock-Salyer Chevrolet Company, 10 Cir., 312 F.2d 249
 
 
 [2]
 The plaintiffs originally commenced this action in the District Court for the County of Bernalillo, State of New Mexico, but the action was removed to the U.S. District Court for New Mexico upon petition of defendant Shukri 'M' El-Khatib
 
 
 [3]
 Also fatally injured in the collision was C. M. Schramm, a passenger in appellant's automobile, who through her administrator filed a companion case to this one, No. 8012. The parties have stipulated on appeal that the issues in both cases are the same and that the appeal shall be binding in the companion case
 
 
 [4]
 Defendant Shukri 'M' El-Khatib was physically present in the State of New Mexico
 
 
 [5]
 64-24-3 provides:
 'Nonresident owners and operators-- Service of process on secretary of state in accident cases.-- The acceptance by nonresidents of the rights and privileges conferred by existing laws to operate motor vehicles on the public highways of the state of New Mexico, or the operation by a nonresident, or his authorized chauffeur, or agent, of a motor vehicle on the said highways, other than under said laws, shall be deemed equivalent to an irrevocable appointment by such nonresident, binding upon his executor, administrator or personal representative, of the secretary of state of the state of New Mexico, or his successor in office, to be his true and lawful agent, upon whom may be served all lawful process in any action or proceeding against said nonresident, growing out of any accident or collision in which said motor vehicle may be involved, while same is operated in the state of New Mexico by said nonresident, or by his authorized chauffeur or agent; and said acceptance or operation of said vehicle shall be signification of his agreement that any such process against him, or his executor, administrator or personal representative, which is so served on the secretary of state shall be of the same legal force and validity as if served upon him personally, or his executor, administrator or personal representative, within the state.'
 64-24-4 merely provides the procedure for accomplishing the service which need not be set forth here.
 
 
 [6]
 'Car Left 8-30-58 Date Due To Arrive 9-2-58
 Deliver To Midtown Motors, Inc.-- Stanley Oakes
 Address 1212 So. 5th Street City Las Vegas State Nevada
 Owners Name Midtown Motors, Inc.
 Address Same City ---------- State ----------
 Being of legal age and desirous of reaching the city of Las Vegas, State of Nevada I, the undersigned, will in no way hold said Owner responsible upon my arrival in the above mentioned city for my financial or moral support, and I am acting as an independent contractor and not as an agent or employee of above owner.
 I agree to comply with all Federal, State and City driving laws and to protect this automobile or unit from damage to the best of my ability.
 Further I waive all claims of injury sustained by me while driving or riding in said automobile or unit, this document releasing Midtown Motors, Inc., from any liability on my part or my heirs past now and forever.
 I agree to drive this automobile or unit from the city of Norman, Oklahoma by routes 152 & 66 & 466 to the above mentioned city and state for my transportation and deliver in same condition of which time the deposit of $20.00 is to be refunded to Shukri M El-Khatib.
 I agree to pay for any minor repairs or service necessary to the operation of this vehicle which are not due to my own negligence obtaining receipts for same in order to receive reimbursement from the above-named owner.
 It is further agreed and understood between the above parties that title and ownership of this automobile rests with Said Owner, and that after 3 days this document is subject to conversion and I am subject to prosecution at their discretion. *150.
 In the event of any accident or major service involving this vehicle I will at once notify the above-mentioned owner of the car, giving him all details and waiting for his instructions before proceeding.
 I agree to deliver this automobile to the above mentioned address within twelve (12) hours after arrival within the State of destination.
 Make Chev Style Sta. Wagon Model 58 Color #998743 Ser. No.
 A 58 K 161945 Mtr. No. --------------- Lic. No. Drive Out Permit
 Year ----- State --------------- Radio Yes Heater Yes Spare Yes
 Jack Yes Wrench Yes.
 Driver's Name Shukri M El-Khatib Married Yes
 Signature (Agent) Red Gilmore
 Signature (Driver) Shukri M El-Khatib
 Notary ---------- County ---------- Commission ---------------
 Pickup New Mexico & Arizona Caravan Permits'
 
 
 [7]
 Earlier in the state court proceedings a deposition was taken of Shukri 'M' El-Khatib which was a part of the record. However, it added little to the circumstances of El-Khatib's relationship with the other defendants but was more directed toward the events surrounding the collision itself