Virginia JONES, personal representative of the estate of Donald Jones, deceased; Arthur Young, Mr. Howard Bosley, John Does 1–100, Diana R. Harrison, and Dan Swallows, as personal representative of the estate of Charlie C. Boyd, deceased, Plaintiffs and Plaintiffs in Intervention;

v.

3M COMPANY, Memorial Sloan-Kettering Cancer Center, and Basil Hilaris, M.D., Defendants.

Civ. No. 82–1393–JB.

United States District Court,
D. New Mexico.

Nov. 9, 1984.

Steven E. Schonberg, Turner W. Branch, David Pearlman, Albuquerque, N.M., for plaintiffs.

Jones, Gallegos, Snead & Wertheim, Santa Fe, N.M., O'Connor & Hayes, Lynbrook, N.Y., White, Koch, Kelly & McCarthy, Santa Fe, N.M., for defendants.

## MEMORANDUM OPINION AND ORDER

BURCIAGA, District Judge.

THIS MATTER comes before the Court on the motion of Defendants Memorial Sloan-Kettering Cancer Center [Sloan-Kettering] and Dr. Basil Hilaris [Hilaris] to dismiss and quash service of process for lack of personal jurisdiction and the motion of Defendant 3M Company to dismiss Plaintiff Dan Swallows' Complaint in Joinder. Defendants Sloan-Kettering and Hilaris have joined in the motion to dismiss the Complaint in Joinder. The Court, having considered the memoranda filed by the parties, and being otherwise fully advised in the premises, finds that the Motion to Dismiss and Quash Service of Process is well taken and should be granted, that the Motion to Dismiss the Complaint in Joinder is not well taken and should be denied, and that the Plaintiff in Joinder, Dan Swallows, should be given 20 days to amend the Complaint in Joinder to specify that he is the Plaintiff bringing the Complaint.

## MOTION TO DISMISS AND QUASH SERVICE

This is the second time the question of personal jurisdiction over these Defendants has come before the Court. The Court denied the first motion to dismiss and to quash service of process, finding that the allegations of the Plaintiffs' Complaint made out a *prima facie* case for assertion of personal jurisdiction. Civ. No. 82–1393–JB, Memorandum Opinion and Order, filed May 17, 1983, at 8. The Court held, however, that the motion to dismiss would be subject to renewal should subsequent developments reveal that the Plaintiffs could not prove the allegations in their Complaint

upon which jurisdiction was founded. *Id.* at 4, 8. This second motion to dismiss and to quash service of process for lack of personal jurisdiction is based upon evidence discovered subsequent to denial of the first motion.

In their Complaints, Plaintiffs allege personal injuries resulting from the use of radioactive Iodine-125 [I–125] seeds for the treatment of cancer. Although 3M Company manufactured and distributed the I–125 seeds, Plaintiffs allege that Sloan-Kettering and Hilaris helped research and develop the seeds, published articles favoring use of the seeds, and disseminated information instructing on use of the seeds. Plaintiffs' cause of action against Sloan-Kettering and Hilaris is based upon the theories of defective design and marketing, inadequate testing, failure to warn and instruct as to use of the seeds, fraud and misrepresentation.

■ Plaintiffs contend that Defendants' supplemental motion to dismiss is not a proper motion because it relies upon evidence outside the pleadings and addresses non-jurisdictional fact issues. This Court may consider materials outside the pleadings in ruling on a motion to dismiss for lack of personal jurisdiction. Rule 12(d) of the Federal Rules of Civil Procedure provides that the issue of personal jurisdiction may be determined before trial. "[A]s there is no statutory direction for procedure upon an issue of jurisdiction, the mode of its determination is left to the trial court." *Schramm v. Oakes,* 352 F.2d 143, 149 (10th Cir.1965) (citing *Gibbs v. Buck,* 307 U.S. 66, 71, 59 S.Ct. 725, 729, 83 L.Ed. 1111 (1939)); *accord Sherman v. American Federation of Musicians,* 588 F.2d 1313, 1314 (10th Cir.1978). "[T]he trial court may gather evidence on the question of jurisdiction ... in an effort to determine the facts as they exist, and based upon the evidence so obtained, decide the jurisdictional dispute before trial." *Schramm v. Oakes,* 352 F.2d at 149 (citations omitted). The depositions and affidavit submitted by the parties are properly before the Court and form the evidentiary basis for a decision on the issue of personal jurisdiction.

■ Plaintiffs state that the affidavit and depositions go beyond the question of personal jurisdiction and raise factual questions concerning the relationship between Sloan-Kettering, Hilaris and 3M that actually will determine liability in this case. Plaintiffs contend that at this time the Court cannot properly rule upon these facts and the legal conclusions to be drawn from them. While the defense of lack of personal jurisdiction usually is dealt with prior to trial, "[o]ne deviation from this procedure is in the case where the issue of jurisdiction is dependent upon a decision on the merits." *Schramm v. Oakes,* 352 F.2d at 143. If jurisdiction turns upon the merits of the case the trial court should postpone a decision on the jurisdictional issue until trial. *Id.* "The purpose of postponing a determination on a jurisdictional question when it is tied to the actual merits of the case is to prevent a summary decision on the merits without the ordinary incidents of trial...." *Id.*

■ In this case, a decision regarding this Court's personal jurisdiction over Sloan-Kettering and Hilaris does not require a decision on the merits. Although the relationship between Sloan-Kettering, Hilaris and 3M may be a determinant of liability, that relationship does not determine personal jurisdiction. The determination of personal jurisdiction rests upon the relationship between Sloan-Kettering and Hilaris, the forum state, and the litigation. *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). Although the various Defendants' "relationships with each other may be significant in evaluating their ties to the forum," due process requirements for personal jurisdiction must be met as to each individual Defendant. *Rush v. Savchuk,* 444 U.S. 320, 334, 100 S.Ct. 571, 580, 62 L.Ed.2d 516 (1980). The relationship between Sloan-Kettering, Hilaris and 3M Company is relevant to the question of whether personal jurisdiction could be asserted over Sloan-Kettering and Hilaris because of their economic relationship with 3M. An analysis of that relationship as it relates to personal

jurisdiction, however, will not amount to a summary decision on the question of liability.

■ The Court's subject matter jurisdiction in this case is based on diversity of citizenship. In a diversity action a federal court has personal jurisdiction to the extent permitted by the long-arm statute of the state in which the court sits, subject to the limitations of the due process clause. *Yarbrough v. Elmer Bunker & Associates*, 669 F.2d 614, 616 (10th Cir.1982); *Quarles v. Fuqua*, 504 F.2d 1358, 1361 (10th Cir. 1974). The issue of whether the Court has personal jurisdiction requires a two-part analysis. First, the Court must determine whether a state statute confers personal jurisdiction over the nonresident defendant; if so, the Court must then determine whether the assertion of personal jurisdiction comports with the requirements of due process. *Prejean v. Sonatrach*, 652 F.2d 1260, 1264 (5th Cir.1982); *Oswalt v. Scripto*, 616 F.2d 191, 196 (5th Cir.1980).

The pleadings do not specify which section of the New Mexico Long-Arm Statute Plaintiffs rely on for an assertion of personal jurisdiction. Two sections of the statute, however, may be applicable. Those sections provide that an individual

submits himself ... to the jurisdiction of the courts of this state as to any cause of action arising from:

(1) the transaction of any business within this state;

. . . .

(3) The commission of a tortious act within this state....

§ 38–1–16 NMSA 1978.

■ It is not necessary to determine whether Sloan-Kettering and Hilaris transacted business or committed a tort within New Mexico in any technical sense. The state courts have interpreted both of these provisions to extend New Mexico's personal jurisdiction as far as is constitutionally permissible under the due process clause. *United Nuclear v. General Atomic Corp.*, 91 N.M. 41, 42, 570 P.2d 305 (1977); *Tarango v. Pastrana*, 94 N.M. 727, 728, 616 P.2d 440 (Ct.App.1980). When the state

courts have construed the state long-arm statute as being coextensive with the requirements of due process "the usual two-step analysis collapses into a single search for the outer limits of what due process permits." *Forsythe v. Overmyer*, 576 F.2d 779, 782 (9th Cir.), *cert. denied*, 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978); *accord Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266, 1269 (9th Cir.1981).

■ In order for a forum to assert personal jurisdiction over a defendant "due process requires ... that ... he have certain minimum contacts with ... [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). "The relationship between the defendant and the forum must be such that it is 'reasonable ... to require the corporation to defend the particular suit which is brought there.'" *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 317, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). While the jurisdictional limits imposed by due process have substantially relaxed in response to modern communications and transportation, the minimum contacts standard still must be met. *See World-Wide Volkswagen*, 444 U.S. at 293, 294, 100 S.Ct. at 565, 566. To meet this standard "it is essential ... that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*,

357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

■■■ Although the Plaintiffs' Opposition to the Second Motion to Dismiss and to Quash Service is not completely clear, it appears to assert that Sloan-Kettering and Hilaris had two types of contact with New Mexico that form a basis for personal jurisdiction. The first asserted contact rests on Sloan-Kettering's substantial participation "in a process resulting in the sale of a product ... that caused injuries to New Mexicans." Plaintiffs' Opposition to Sloan-Kettering's Second Motion to Dismiss and to Quash Service at 5. Plaintiffs assert that Sloan-Kettering participated in this process in two ways. First, Plaintiffs state that Sloan-Kettering and Hilaris were closely involved with the development and testing of the I–125 seeds and second, Plaintiffs assert that Sloan-Kettering and Hilaris played a role in the promotion and marketing of I–125 seeds. *Id.* at 2, 5.

The involvement of Sloan-Kettering and Hilaris in the development and testing of the I–125 seeds cannot, without more, form a basis for personal jurisdiction. Defendants' research and testing was not connected with this State in any way. Although the end product of their research eventually was marketed by 3M in New Mexico, "it cannot be said that *defendant* engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just or reasonable...." *Rush v. Savchuk*, 444 U.S. 320, 328, 100 S.Ct. 571, 577, 62 L.Ed.2d 516 (1980) (emphasis in original).

Defendants' alleged promotion and marketing of the I–125 seeds could form a basis for personal jurisdiction if it were shown that they placed the I–125 seeds in the stream of commerce and derived financial gain from the sale of the seeds. In *World-Wide Volkswagen Corp. v. Woodson*, the Supreme Court stated:

> [I]f the sale of a product of a manufacturer or distributor ... arises from the efforts of a manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is

not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

444 U.S. 286, 297–98, 100 S.Ct. 559, 567–68, 62 L.Ed.2d 490 (1980).

This Court relied on a "stream of commerce" analysis in its denial of Sloan-Kettering and Hilaris' first Motion to Dismiss and to Quash Service of Process. The Court found that "it appears from the Complaint that ... [Defendants'] roles in developing and marketing the I–125 seeds, and their relationship to 3M *places them in the direct economic chain such that they will profit by use of the product.*" No. Civ. 82–1393–JB, Memorandum Opinion and Order filed May 17, 1983, at 6 (emphasis added). The Court cautioned, however, that "[t]he motion to dismiss will be subject to renewal should the plaintiffs be unable to prove their assertions that Sloan-Kettering and Dr. Hilaris are in the chain of economic benefit from the marketing of the I–125 seeds." *Id.* at 4.

The evidence now before the Court clearly establishes that Sloan-Kettering and Hilaris do not stand in the position of a manufacturer or distributor who has placed his goods in the stream of commerce. The Plaintiffs state that Sloan-Kettering promoted the use of the radioactive seeds by supporting, encouraging and teaching about use of the seeds and by publishing medical literature about the seeds. Plaintiffs' Opposition to Sloan-Kettering's Second Motion to Dismiss and to Quash Service at 2, 3. "In return, 3M provided many thousands of dollars worth of free I–125 seeds and assured Sloan-Kettering of a continuing supply of inexpensive seeds produced to Sloan-Kettering's specifications." *Id.* Plaintiffs further allege that "Dr. Hilaris and Sloan-Kettering received honora-

ria, contributions and other revenues from 3M" and "many hundreds of thousands of dollars ... in public grant money...." *Id.* at 3.

Plaintiffs apparently contend that because 3M derived economic benefit from the sale of I–125 seeds in New Mexico, and Sloan-Kettering and Hilaris received some financial support from 3M, this Court may assert personal jurisdiction over Sloan-Kettering through 3M. This relationship between Hilaris, Sloan-Kettering and 3M is not sufficient to support an assertion of personal jurisdiction by this Court. The primary focus in a determination of personal jurisdiction is the relationship between Sloan-Kettering, Hilaris and the State of New Mexico. "[I]t is essential ... that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

Plaintiffs have failed to establish any connection between the sale of I–125 seeds by 3M and the economic benefits accruing to Sloan-Kettering from its relationship with 3M. There is no evidence in the record to suggest that 3M's financial contributions to Sloan-Kettering and Hilaris were dependent upon or in any way connected with the Defendants' "promotion" or 3M's sale of I–125 seeds. While it is possible that some money 3M received from sale of I–125 seeds found its way into the money Sloan-Kettering received from 3M, "financial benefits accruing to the defendant from a collateral relation to the forum state will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that state." *World-Wide Volkswagen,* 444 U.S. at 299, 100 S.Ct. at 568. In this case there is no evidence that Sloan-Kettering or Hilaris conducted any activities within New Mexico or assisted 3M in conducting its activities in New Mexico, and therefore there is no constitutionally cognizable contact between Sloan-Kettering, Hilaris and New Mexico.

The second type of contact Plaintiffs assert is based upon the fact that "Sloan-Kettering ... knew, or should have known, that the I–125 seeds and the designs and techniques developed by Sloan-Kettering would be disseminated, used and relied upon by doctors and their patients in New Mexico." Plaintiffs' Opposition to Sloan-Kettering's Second Motion to Dismiss and to Quash Service at 4, 5. Plaintiffs point to the fact that 3M referred physicians to materials prepared by Sloan-Kettering and that 3M heavily relied upon information from Sloan-Kettering.

The fact that reliance on information from Sloan-Kettering by physicians and their patients was foreseeable is not dispositive. " '[F]oreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen,* 444 U.S. at 295, 100 S.Ct. at 566. While foreseeability is not irrelevant, "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he could reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567.

Here, Defendants' only "conduct and connection" with New Mexico consists of information disseminated by Sloan-Kettering, and relied upon by physicians in New Mexico. Reliance on that information by the New Mexico physicians cannot form the basis for personal jurisdiction. "The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State." *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1239. An assertion of personal jurisdiction requires that the Defendants do some act to purposefully avail themselves of the laws of this forum. The publication of information that fortuitously finds its way into this forum is not such an act.

An assertion of personal jurisdiction based on dissemination of information into

the forum would have far-reaching results. Sloan-Kettering and Hilaris could be haled into court in any jurisdiction where their research was used and relied upon, irrespective of whether they conducted any other activities in the forum state. Plaintiffs have cited no authority allowing an assertion of personal jurisdiction based on dissemination of information. This Court declines to find jurisdiction on that basis.

The evidence before the Court fails to establish any contact between Sloan-Kettering, Hilaris, and New Mexico upon which personal jurisdiction can be based. While the record does contain evidence that Sloan-Kettering and Hilaris were closely involved with the research and development of the seeds, that they shared information concerning the seeds with 3M and others, and that they received some financial assistance from 3M, there is no evidence that either Sloan-Kettering or Hilaris delivered "products into the stream of commerce with the expectation that they ... [would] be purchased by consumers in the forum state." *World-Wide Volkswagen Corp.*, 444 U.S. at 298, 100 S.Ct. at 567. Neither Sloan-Kettering nor Hilaris derived any direct economic benefit from the marketing of I–125 seeds. Nor is the dissemination of information by Sloan-Kettering and Hilaris, without more, a basis for assertion of personal jurisdiction.

The Supreme Court has noted that although modern realities have necessitated a flexible approach to a determination of personal jurisdiction, nevertheless

> [e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for the litigation; the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.

*World-Wide Volkswagen Corp.*, 444 U.S. at 294, 100 S.Ct. at 565. In a case such as this, where the Defendants have had no contact with the forum state, due process does not permit this Court to exercise personal jurisdiction.

## MOTION TO DISMISS THE COMPLAINT IN JOINDER

Defendants contend that the Complaint in Joinder should be dismissed because 1) the Complaint was brought in the name of Charlie C. Boyd, a deceased person, rather than in the name of Dan Swallows, the personal representative of Mr. Boyd's estate, and 2) service of the Complaint was improper. For the reasons stated below, the Court finds that the Motion is not well taken and should be denied and the personal representative of Mr. Boyd's estate should be given 20 days to amend the Complaint in Joinder to specifically name himself as the Plaintiff.

This suit originally was brought by Virginia Jones, as personal representative of the estate of Donald Jones, Arthur Young and Howard Bosley. On May 13, 1983, Dan Swallows, as personal representative of the estate of Charlie C. Boyd, filed a Motion to Intervene. The Court denied the Motion but indicated that it might permit Mr. Swallows to be joined as a plaintiff pursuant to Rule 20 of the Federal Rules of Civil Procedure. Mr. Swallows filed a Motion for Joinder on July 7, 1983. The Court granted the Motion for Joinder and Mr. Swallows filed the Complaint in Joinder on November 25, 1983. Defendants' counsel was served with the Complaint in Joinder by mail, pursuant to Rule 5 of the Federal Rules of Civil Procedure. The Complaint in Joinder is almost identical to the original Complaint.

The Motion to Intervene and subsequent Motion for Joinder were filed in the name of Dan Swallows, as personal representative of the estate of Charlie C. Boyd. The Court's Order denying the Motion to Intervene and the Court's Order granting the Motion for Joinder also refer to Dan Swallows. The Complaint in Joinder, however, names only Charlie C. Boyd, the deceased, as the Plaintiff. Nowhere does the Com-

plaint in Joinder state that it is being brought by the personal representative of Mr. Boyd's estate.

Defendants' first contention is that the Complaint in Joinder is void and must be dismissed because the Plaintiff named in the Complaint, Charlie C. Boyd, is deceased and lacks the capacity to bring the action. "The question of capacity to sue is whether the person bringing the suit has authority to use the courts of that jurisdiction." *Moore v. Matthews Book Co., Inc.*, 597 F.2d 645, 647 (8th Cir.1979). In this case capacity to sue is determined by New Mexico law. Fed.R.Civ.P. 17(b). Under New Mexico law, a deceased person lacks capacity to sue. *See Stang v. Hertz Corp.*, 81 N.M. 348, 467 P.2d 14 (1970); *Kilkenny v. Kenney*, 68 N.M. 266, 361 P.2d 149 (1961); § 41–2–3, NMSA 1978; § 37–1–11, NMSA 1978. The personal representative of the estate of a deceased has the capacity to sue on behalf of the deceased. § 41–2–3, NMSA 1978; § 45–3–703, NMSA 1978.

■ Because the Complaint in Joinder does not refer to Dan Swallows on its face Defendants contend that it "is brought in the name of a decedent, . . . is void and should be dismissed." Memorandum in Support of Motion to Dismiss Complaint in Joinder. This contention ignores the pleadings that preceded the filing of the Complaint in Joinder. The Motion for Joinder, filed July 7, 1983, states that "Dan Swallows, as Personal Representative of the Estate of Charlie C. Boyd, hereby moves the court for an order permitting permissive joinder as a plaintiff. . . ." The Order granting the Motion specifically refers to Dan Swallows as the Plaintiff being joined. No. CV 82–1393–JB, Order filed Aug. 17, 1983. Although the Complaint in Joinder names only Charlie C. Boyd, all the pleadings that led up to the filing of the Complaint in Joinder name Dan Swallows as the Plaintiff. Viewed in this context it is clear that the Complaint in Joinder is being brought by Dan Swallows. While failure to name Mr. Swallows on the face of the Complaint may be a technical defect, to dismiss for so slight an error would be to exalt form over substance. Mr. Swallows is the person bringing the suit; he has the capacity to do so. He should be given a reasonable time to amend the Complaint in Joinder to identify himself as the Plaintiff.

■ Defendants' second contention is that service of the Complaint in Joinder should have been made pursuant to Rule 4, rather than Rule 5 of the Federal Rules of Civil Procedure. This contention is without merit. Rule 5, with certain exceptions not applicable here, requires "every pleading *subsequent to the original complaint*" to be served upon the attorney of a party represented by counsel. Fed.R.Civ.P. 5(b) (emphasis added). Service upon a party's attorney may be made by mailing a copy of the pleading to the attorney's last known address. *Id.* The pivotal question is whether the Complaint in Joinder should be considered a "pleading subsequent to the original complaint" encompassed within Rule 5. There is no case law directly addressing this issue. It has been held, however, that service of intervenor complaints may be effected pursuant to Rule 5. *City of Philadelphia v. Morton Salt Co.*, 248 F.Supp. 506, 509 (E.D.Pa.1965). Courts have also held that an amended complaint may be served pursuant to Rule 5 unless the amended complaint contains a cause of action entirely different from the original complaint. *Berman v. Herrick*, 30 F.R.D. 9, 12 (E.D.Pa.1962); *Lasch v. Antkies*, 161 F.Supp. 851, 852 (E.D.Pa.1958).

■ The purpose of personal service pursuant to Rule 4 is to notify the defendant that an action has been filed against him. *Nichols v. Surgitool, Inc.*, 419 F.Supp. 58, 63 (W.D.N.Y.1976); *Montclair Electronics, Inc. v. Electra/Midland Corp.*, 326 F.Supp. 839, 842 (S.D.N.Y.1971). When service is made upon a corporation it should be "made upon a representative so integrated with the organization that he will know what to do with the papers." *American Football League v. National Football League*, 27 F.R.D. 264, 269 (D.Md. 1961). In this case, service pursuant to Rule 5 does not thwart the purposes of personal service. Personal service of the

original Complaint notified the Defendants of the action filed against them. The Motion for Joinder and the Order granting the Motion notified the Defendants that a new Plaintiff was joining the lawsuit. The Complaint in Joinder is almost identical to the original Complaint; it contains no new cause of action that might require personal service.

■ Service by mail upon Defendants' attorney also satisfies the requirement of service "upon a representative so integrated with the organization that he will know what to do with the papers." *American Football League, supra.* Defendants' counsel has been involved in this lawsuit since its inception. They have vigorously resisted Mr. Swallows' attempts to join this lawsuit. It is beyond dispute that they knew what to do with the Complaint in Joinder after it was served upon them. Indeed, it would be anomalous to require Mr. Swallows to serve his Motion for Joinder upon Defendants' counsel, yet require him to serve Defendants personally with the Complaint in Joinder itself.

Wherefore,

IT IS ORDERED, ADJUDGED AND DECREED as follows:

1. The motion of Defendants Memorial Sloan-Kettering Cancer Center and Dr. Basil Hilaris to dismiss and quash service of process is hereby granted;

2. Defendants' Motion to Dismiss the Complaint in Joinder is hereby denied, and

3. Plaintiff in Joinder Dan Swallows is hereby given twenty (20) days to amend his Complaint to identify himself as Plaintiff.