JEMEZ AGENCY, INC. et al., Plaintiffs,

v.

CIGNA CORP. and Insur. Co. of North America, et al., Defendants.

Frederick C. TIBERI, et al., Plaintiffs,

v.

CIGNA CORP., et al., Defendants.

Civ. Nos. 93–1011 JB, 93–0397 JB.

United States District Court, D. New Mexico.

Oct. 12, 1994.

Mary E. Walta and J.E. Gallegos, Gallegos Law Firm, Santa Fe, NM, for plaintiffs.

M. Eliza Stewart and William C. Madison, Madison, Harbour, Mroz & Puglisi, Jay R. Hone, Albuquerque, NM, Robert J. Malinak, David R. Poage, and Patrick O. Keel, Baker & Botts, Houston, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

BURCIAGA, Chief Judge.

THIS MATTER comes before the Court on Defendant CIGNA Corporation's September 13, 1993 motion to dismiss for lack of personal jurisdiction. The Court, having reviewed the record, the submissions of the parties and the relevant law, and being otherwise fully advised in the premises, finds Defendant's motion to dismiss is well taken and is granted.

The dispute in this case centers on a full-service exclusive agency program that subsidiary corporations of Defendant CIGNA Corporation ("CIGNA") established. Pursuant to this marketing program, known as COMPAR, individual insurance agents relinquished their independent status to become the exclusive representatives of certain subsidiary companies of CIGNA, referred to as

the Property & Casualty Group ("P & C Group"). Plaintiffs are independent insurance companies or individuals who possessed exclusive representation rights under COMPAR. Sometime in the early 1990s, Mr. Caleb Fowler, President of the P & C Group, made the decision to terminate the COMPAR program because of its unprofitability. Termination of COMPAR resulted in the present litigation.

CIGNA is the ultimate parent corporation of Defendant Insurance Co. of North America ("INA"), which in turn controls the P & C Group of insurance companies. CIGNA is incorporated in Delaware and its principal place of business is in Pennsylvania. CIGNA's sole purpose is to hold stock in the various subsidiary insurance companies. CIGNA does not sell any product or service or enter into any agency contracts in order to have others sell insurance products on its own behalf. Defendants INA and the P & C Group transact substantial business in New Mexico and are, undisputedly, subject to New Mexico *in personam* jurisdiction. CIGNA moves to dismiss Plaintiffs' claims against it, however, because it has no office, employees, or agents in New Mexico and has never entered into any contracts with any of the Plaintiffs. Hence CIGNA contends that it lacks "minimum contacts" with New Mexico and cannot be served by virtue of New Mexico's long-arm statute. Plaintiffs attempt to justify assertion of personal jurisdiction over CIGNA by arguing, first, that the subsidiaries, which are subject to New Mexico jurisdiction, are mere "alter egos" of CIGNA and therefore CIGNA and the subsidiaries can be considered as one corporation; or two, the P & C Group terminated the COMPAR program in its capacity as an agent for CIGNA.

■■■ A court may exercise personal jurisdiction over an out-of-state defendant if the defendant is amenable to service under the state's long-arm statute and the exercise of jurisdiction comports with the due process guarantees of the Fourteenth Amendment to the United States Constitution. *Taylor v. Phelan,* 912 F.2d 429, 431–32 (10th Cir.1990), *cert. denied,* 498 U.S. 1068, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991); *Leney v. Plum Grove*

*Bank,* 670 F.2d 878, 879 (10th Cir.1982). The existence of *in personam* jurisdiction under the forum state's long-arm statute is evaluated by reference to the law of the forum state. *Taylor,* 912 F.2d at 431; *Quarles v. Fuqua Indus., Inc.,* 504 F.2d 1358, 1361 (10th Cir.1974). Matters outside the pleadings, such as affidavits and other documents, may be considered. *Schramm v. Oakes,* 352 F.2d 143, 149 (10th Cir.1965). Plaintiffs bear the burden of proof on the jurisdictional issue when the facts are controverted. *Williams v. Bowman Livestock Equip. Co.,* 927 F.2d 1128, 1130 (10th Cir. 1991); *State ex rel. Anaya v. Columbia Research Corp.,* 92 N.M. 104, 105, 583 P.2d 468, 469 (1978). Plaintiffs meet their burden at the pre-trial motion stage if they make a *prima facie* showing that personal jurisdiction exists. *Behagen v. Amateur Basketball Ass'n,* 744 F.2d 731, 733 (10th Cir.1984), *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). The Court accepts Plaintiffs' allegations in the complaint as true if Defendant CIGNA does not contest them with affidavits or other materials, and resolves all factual disputes raised by conflicting affidavits in the Plaintiffs' favor. *Id.* at 733.

New Mexico's long-arm statute reads in pertinent part as follows:

> Any person, whether or nor a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:
>
> (1) the transaction of any business within this state;
>
> .        .        .        .        .
>
> (3) the commission of a tortious act within this state;
>
> . . . .

N.M.Stat.Ann. § 38–1–16(A) (Michie 1987). New Mexico has extended the reach of its long-arm statute to the limits of due process. *United Nuclear Corp. v. General Atomic Corp.,* 91 N.M. 41, 42, 570 P.2d 305, 306 (1977).

■ Plaintiffs attempt to utilize CIGNA's subsidiaries as a means of establishing jurisdiction over CIGNA by contending that CIGNA transacted business and committed tortious acts within New Mexico through its subsidiaries. The general rule, however, is that "judicial jurisdiction over a subsidiary corporation does not of itself give a state judicial jurisdiction over the parent corporation[, even if] the parent owns all of the subsidiary's stock." Restatement (Second) of Conflicts of Laws § 52 cmt. b (1971). The venerable opinion of Justice Brandeis in *Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 336–37, 45 S.Ct. 250, 251–52, 69 L.Ed. 634 (1925), stands for this rule as well. CIGNA is merely the sole shareholder of INA and the P & C Group. Shareholders are generally not held responsible for the acts of the corporation. "A basic proposition of corporate law is that a corporation will ordinarily be treated as a legal entity separate from its shareholders." *Scott v. AZL Resources, Inc.,* 107 N.M. 118, 121, 753 P.2d 897, 900 (1988). This fundamental principal logically applies to parent and subsidiary corporations. "[E]xactly the same rule applies where the stockholder is a parent company and where the corporation is a subsidiary corporation...." 13A William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 6222 at 67 (1986). Enterprises may incorporate in order to limit shareholder liability, 13A Fletcher, *supra* §§ 6213, 6214, including the liability of exposure to the jurisdiction of out-of-state courts. *See Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1362 (10th Cir.1993) ("The law allows businesses to incorporate to limit liability and isolate liabilities among separate entities.... One way liability is limited ... is that shareholders generally are not liable for the acts of the corporation."); *Cruttenden v. Mantura,* 97 N.M. 432, 434–35, 640 P.2d 932, 934–35 (1982) (refusing to permit assertion of jurisdiction over parent company based on acts of subsidiary absent proof demonstrating that corporate separateness should be disregarded).

■ As discussed, the governing presumption is that "[t]he mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent." *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1159 (5th Cir. 1983). In exceptional cases, however, a court may properly invoke jurisdiction over a parent corporation predicated upon the acts of its subsidiaries in one of two situations. First, if the parent's control of the subsidiary goes beyond that normally exercised by a majority shareholder, and is "so complete as to render the subsidiary an instrumentality of the parent," *Cruttenden,* 97 N.M. at 434, 640 P.2d at 934, *citing Edgar v. Fred Jones Lincoln Mercury,* 524 F.2d 162, 166 (10th Cir.1975), the Court may deem the subsidiary the mere "alter ego" of the parent, and accordingly, may pierce the corporate veil. *Cruttenden,* 97 N.M. at 434, 640 P.2d at 934. Alternatively, if the subsidiary does an act at the direction of the parent, or in the course of the parent's business, the Court may characterize the subsidiary as an agent of the parent and thereby hold the parent answerable as a principal. Restatement (Second) of Conflicts of Laws § 562 cmt. b (1971); *Allen v. Toshiba Corp.,* 599 F.Supp. 381, 389 (D.N.M.1984). Plaintiffs advance both theories.

### Alter Ego Analysis

■ The law of New Mexico controls the alter ego analysis in the context of establishing personal jurisdiction over a parent based on the acts of its subsidiary. *See Quarles v. Fuqua Indus., Inc.,* 504 F.2d 1358, 1362–63 (10th Cir.1974); *Allen,* 599 F.Supp. at 390; 2 James W. Moore, Moore's Federal Practice ¶ 4.41–1[6] at 4–372 (1989) ("[W]hether jurisdiction exists over a nonresident parent corporation by reason of the acts of a subsidiary is a matter governed by state law, including statutes and case law, subject only to the limitations of due process." (citing cases)). Plaintiffs must, by "clear evidence that the parent in fact controls the activities of the subsidiary," *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 905 (1st Cir. 1980), overcome a "presumption of corporate separateness." *Allen,* 599 F.Supp. at 390. In order to pierce the corporate veil in New Mexico, Plaintiffs must satisfy three requirements: (1) a showing of instrumentality or domination; (2) a demonstration of improper

or fraudulent purpose for incorporation; and (3) proximate causation. *Scott,* 107 N.M. at 121, 753 P.2d at 900. With respect to the first prerequisite, Plaintiffs must demonstrate that the subsidiaries "are mere business conduit[s] for the parent or [that] there is such unity of interest and ownership that the individuality or separateness of the two corporations has ceased...." *Id.* In other words, the subsidiaries must be shown to be mere "alter egos" of CIGNA. *Id.*

■ As their first line of attack, Plaintiffs submit evidence demonstrating that the companies within the P & C Group are not independently managed, but are instead operating as one entity. Undisputedly, the individual P & C companies are little more than vehicles for delivering different insurance marketing programs priced at different rates. Apparently, state law mandates this mode of organizing insurance businesses into a fleet of separate single-product insurance companies. A single president and chief executive officer directs the P & C Group. The Agency Division, a subordinate entity of INA, is responsible for conducting a common marketing effort for the entire P & C Group. Each P & C company shares an annual business plan and a common allocation of expenses.

Plaintiffs have successfully demonstrated that the P & C Group of insurance companies conduct business as one entity. The issue, however, is whether CIGNA possesses *de facto* dominance over the P & C Group such that the P & C Group *and CIGNA* can be characterized as one entity. Plaintiffs have failed to so prove. The record clearly demonstrates that INA and the P & C Group are entities separate and distinct from CIGNA. Plaintiffs offer no evidence to contest that CIGNA and the subsidiaries maintain separate books, records, accounts and assets, enter into contracts in their own names, bear their own costs, have their own boards of directors and officers and conduct their own meetings. Corporate formalities are recognized and maintained. The marketing materials Plaintiffs submitted refer to the subsidiaries as companies rather than as departments or divisions of CIGNA; in fact, these materials emphasize that "CIGNA Corpora-

tion is not an insurance company. Insurance products and services are sold by the corporation's insurance subsidiaries." None of the directors of CIGNA is a director or officer of any of the other subsidiaries. Although some officer positions are held in common, "identity of officers and directors has been held insufficient to allow corporate veil piercing." *Quarles,* 504 F.2d at 1364. *See also Kramer Motors, Inc. v. British Leyland, Ltd.,* 628 F.2d 1175, 1177–78 (9th Cir.) (fact that some officers and directors employed by both parent and subsidiary insufficient to justify assertion of jurisdiction over parent holding company), *cert. denied,* 449 U.S. 1062, 101 S.Ct. 785, 66 L.Ed.2d 604 (1980); *Scott,* 107 N.M. at 121–22, 753 P.2d at 900–01 ("[t]hat the corporations have common officers and directors, or both, is not sufficient by itself to render a parent liable....").

In short, the subsidiaries are independently managed and CIGNA has no control over the "day to day business decisions" of the subsidiaries. *Quarles,* 504 F.2d at 1364. Plaintiffs make much of the undisputed fact that CIGNA sets overall corporate earnings objectives for its subsidiaries, reviews the long-term business strategy of the P & C Group, and participates in key managerial decisions. Taken as a whole, the record indicates only that CIGNA exercises broad authority over major long-term decisions, consistent with its role as sole shareholder. "It is inherent in the stockholder-corporation relationship that the stockholder should ask for reports, sometimes consult with corporate officers, offer advice and even object to proposals." *Quarles,* 504 F.2d at 1363 (citation omitted). *See also Topp v. CompAir, Inc.,* 814 F.2d 830, 837 (1st Cir.1987) (parent corporation's executive officer terminated subsidiary officer's employment; nevertheless, "the fact that a parent corporation exercises the control ... necessarily incident to the full ownership of its subsidiary is insufficient ... to justify ignoring separate corporate entities.").

Plaintiffs point to the fact that CIGNA provided extensive financing to INA and the P & C Group. The mere fact that CIGNA owns all of the stock of the subsidiaries in question is of course a legally insufficient

basis for piercing the veil. *Scott,* 107 N.M. at 121, 753 P.2d at 900; *Quarles,* 504 F.2d at 1362; *Allen,* 599 F.Supp. at 390; Restatement (Second) of Conflicts of Laws § 52 cmt. b (1971). As the sole shareholder, CIGNA's injection of capital is not surprising and is of no import to the inquiry. In an analogous case, *Quarles,* 504 F.2d at 1361–64, the Tenth Circuit found inconsequential the parent's "provision of adequate capital" to the subsidiaries "on an open account," *id.* at 1363, concluding that "parent financing of the subsidiary will not make the subsidiary a mere instrumentality." *Id.* at 1363–64.

Plaintiffs next contend that CIGNA's practice of preparing consolidated financial statements and annual reports for review by the shareholders and the Securities and Exchange Commission indicates that CIGNA and the subsidiaries in fact operate as a single enterprise. However, as the Second Circuit noted in *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.,* 751 F.2d 117 (2d Cir.1984), the preparation of consolidated financial statements is "controlled by generally accepted accounting principles, which require parent corporations to consolidate subsidiaries if the parent owns more than 50 percent of the subsidiary's stock." *Id.* at 121 n. 3 (*citing* American Institute of Certified Public Accountants, *Consolidated Financial Statements,* Accounting Research Bulletin No. 51, at ¶ 2 (1959)). That CIGNA's profits depend upon the success of its subsidiaries is obvious, and thus CIGNA's reporting of all sources of its profits in a single consolidated statement says little about whether CIGNA so dominates the subsidiaries' activities as to render CIGNA liable for their acts.

The only compelling evidence Plaintiffs offered which tends to show lack of corporate separateness is the fact that employees of CIGNA and INA share a common payroll system. *See Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1363 (10th Cir.1993) (citing cases finding sufficient interrelation of operations when, *inter alia,* parent and subsidiary participated in a common payroll system). This evidence fails to outweigh the other factors discussed above which indicate that CIGNA and its subsidiaries are independently managed on a daily basis. Plaintiffs have failed to make a *prima facie* showing that CIGNA so dominated internal management of the subsidiaries that they may be characterized as mere instrumentalities of CIGNA.

[11, 12] In addition, Plaintiffs offer absolutely no evidence to satisfy the second requirement of the alter ego analysis: demonstration of improper or fraudulent purpose for incorporation. "Mere control by the parent corporation is not enough to warrant piercing the corporate veil. Some form of moral culpability attributable to the parent, such as use of the subsidiary to perpetrate a fraud, is required." *Scott,* 107 N.M. at 121, 753 P.2d at 900. *See also Quarles,* 504 F.2d at 1362 ("Circumstances justify disregard of the corporate entity if separation of the two entities has not been maintained *and injustice would occur to third parties if the separate entity were recognized.*") (emphasis added); *Harlow v. Fibron Corp.,* 100 N.M. 379, 382, 671 P.2d 40, 43 (Ct.App.1983). In assessing this factor, undercapitalization, sham formalities or formation, or fraudulent manipulation or mismanagement resulting in losses, are all facts to be considered. *Scott,* 107 N.M. at 122, 753 P.2d at 901. Plaintiffs have offered or alleged nothing in this regard, and in fact, the evidence is to the contrary. CIGNA submitted uncontradicted proof that the subsidiaries are fully solvent and capitalized, with net worth for each of them in the multiple millions of dollars.[1]

*Agency Analysis*

A second theoretical basis for acquiring personal jurisdiction over CIGNA consists of evaluating whether the subsidiaries were acting as CIGNA's agent in terminating the COMPAR program, an act giving rise to this litigation. If CIGNA directed the termination of COMPAR, CIGNA may be held answerable as a principal. Restatement

---

1. Because Plaintiffs have failed to make the requisite showing of either (1) instrumentality or domination or (2) improper or fraudulent purpose, the Court need not address whether Plaintiffs met the proximate causation requirement for piercing the corporate veil in New Mexico. *See Scott,* 107 N.M. at 121, 753 P.2d at 900.

(Second) of Conflicts of Laws § 562 cmt. b (1971); *Allen,* 599 F.Supp. at 389.

■ Here too, Plaintiffs have failed to make the requisite *prima facie* showing. CIGNA offers uncontested evidence that Mr. Caleb Fowler, President and CEO of the P & C Group, made the ultimate decision to terminate the COMPAR program. Plaintiffs offer evidence which tends to suggest merely that CIGNA reviewed and eventually approved of the P & C Group's termination of COMPAR. Again, "[i]t is inherent in the stockholder-corporation relationship that the stockholder should ask for reports, sometimes consult with corporate officers, offer advice and even object to proposals." *Quarles,* 504 F.2d at 1363 (citation omitted).

In a factually similar case, *Kramer Motors, Inc. v. British Leyland, Ltd.,* 628 F.2d 1175 (9th Cir.), *cert. denied,* 449 U.S. 1062, 101 S.Ct. 785, 66 L.Ed.2d 604 (1980), plaintiff, a former automobile dealership, attempted to assert *in personam* jurisdiction over both British Leyland Motors, Inc. ("BLMI"), and the parent corporation of BLMI, British Leyland International, Ltd. ("BLIL"). *Id.* at 1177. After concluding that the subsidiary was not the mere alter ego of the parent generally, *id.,* the court then examined whether the parent corporation performed an act through its subsidiary which gave rise to the lawsuit. *Id.* at 1178. The Ninth Circuit concluded that the parent's approval of the subsidiary's marketing plan eliminating plaintiff's dealership did not constitute a legally sufficient basis for subjecting the parent to the jurisdiction of the court. "BLIL and BLMI obviously shared an interest in promoting ... car sales. But the British parent's mere approval of a marketing scheme developed by its United States subsidiary does not constitute the kind of deliberate forum protection-invoking act which the law requires." *Id.*

Application of alter ego or agency principles yields the conclusion that the subsidiaries in question are entities legally distinct from CIGNA. Nevertheless, some courts have held that a parent corporation may be subject to the forum state's jurisdiction simply by virtue of the subsidiary's presence in the forum state, and that alter ego or agency

principles have no place at all in the due process analysis. *Energy Reserves Group, Inc. v. Superior Oil Co.,* 460 F.Supp. 483, 495 (D.Kan.1978) ("While ... alter ego analysis ... may in some situations retain statutory value [with respect to the forum state's long-arm statute, it] no longer [has] any bearing on the constitutionality of jurisdiction over a defendant...."). *See also* 2 James W. Moore, Moore's Federal Practice ¶ 4.41–1[6] at 4–375 to 4–376 (1986):

> The question remains undecided whether [alter ego analysis] is mandated by the due process clause.... Certainly there is potential for unfairness ... since a parent corporation could structure its activities in such a manner as to take advantage of doing business within a state through a subsidiary but remain immune from suit. Sound logic supports the view that, subject only to due process minimum contacts, *a state long-arm statute could authorize jurisdiction over a parent corporation solely because of the intrastate activities of a subsidiary.*

(emphasis added) (citations omitted). If these authorities are correct, then the exercise of *in personam* jurisdiction over CIGNA would be proper. New Mexico courts have extended the reach of its long-arm statute to the outer limits of due process. *United Nuclear Corp. v. General Atomic Co.,* 91 N.M. 41, 42, 570 P.2d 305, 306 (1977) ("New Mexico has extended its *in personam* jurisdiction as far as constitutionally permissible.").

■ The Supreme Court's opinion in *Cannon Mfg. Co. v. Cudahy Packing Co.,* 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), setting forth the various alter ego principles applicable for personal jurisdiction purposes, did not concern "the question of the constitutional powers of the state, or of the federal government...." *Id.* at 336, 45 S.Ct. at 251. However, any suggestion that courts should not apply alter ego or agency principles as a component of due process analysis is contrary to subsequent Supreme Court precedent. Due process mandates that before a defendant may constitutionally be required to defend suit in an out-of-state forum, the defendant's "minimum contacts" with the forum state must be such that "maintenance of the

suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citation and quotation omitted). Foreseeability is the primary criterion by which to judge the fairness of the exercise of personal jurisdiction and is the touchstone of due process. "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), such that the defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Citizens must have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Shaffer v. Heitner,* 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977) (Stevens, J., concurring). The unilateral and unforeseeable activity of a third party does not provide the requisite minimum contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984). And finally, personal jurisdiction based on the presence of property in the forum state, without more, does not satisfy the demands of due process. *Shaffer,* 433 U.S. at 213–17, 97 S.Ct. at 2584–87.

As discussed *supra,* a bedrock principle of corporate law is that shareholders are not held personally responsible for the acts of a corporation. 13A Fletcher, *supra,* §§ 6213–14, 6222. Incorporation is intended by law to protect shareholders from personal liability (that is, from liability beyond the extent of each shareholder's investment). Presumably, the law permits the corporate form, and the concomitant separation of ownership and management, in order to facilitate investment and thereby stimulate economic growth. *See* Frank H. Easterbrook and Daniel R. Fischer, *Limited Liability and the Corporation,* 52 U.Chi.L.Rev. 89 (1985); Richard A. Posner, *Economic Analysis of Law* 369–72 (1986). Individuals who adopt the corporate form of business, and carefully maintain corporate separateness in accordance with alter ego principles, are entitled to and expect to have the corporation treated as a separate entity. This reasonable expectation, expressly induced by law, should not be compromised by compelling shareholders otherwise shielded from personal liability to defend suits filed against the corporation in distant forums. As the Supreme Court held in *World–Wide Volkswagen:*

> The Due Process Clause, by ensuring the orderly administration of the laws, gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

444 U.S. at 297, 100 S.Ct. at 567 (quotation and citation omitted).

If a shareholder does everything it can to "structure its primary conduct," *id.,* in such a way as to ensure corporate separation under state law—that is, the parent does not interfere in the internal management of the subsidiary corporation, observes corporate formalities, and does not use the corporation as a mere instrumentality or for fraudulent reasons—the corporation should be deemed a separate entity for all purposes. After making such efforts, that shareholder would not "reasonably anticipate being haled into court," *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567, in all states in which the corporation transacts business. Any rule that would, in essence, permit corporations to be treated as separate entities for some purposes, but not for others, would frustrate the goals of the due process clause of "ensuring the orderly administration of the laws" and lending a "degree of predictability to the legal system." *Id.* In addition, the corporate shareholder would be forced to incur substantial hardship in defending suits in distant forums.

> The imposition of such burdens on the parent corporation runs counter to the very purpose of limiting the liability of the parent corporation in the first place and therefore arguably offends traditional notions of fair play and substantial justice.... [T]he integration of ... the general principles of limited corporate liability ... into the *International Shoe* [minimum

contacts] test is both legally and economically justifiable.

William A. Voxman, Comment, *Jurisdiction Over a Parent Corporation in Its Subsidiary's State of Incorporation*, 141 U.Pa. L.Rev. 327, 344 (1992).

The concern that "there is potential for unfairness ... since a parent corporation could structure its activities in such a manner as to take advantage of doing business within a state through a subsidiary but remain immune from suit," Moore's Federal Practice, *supra* ¶ 4.41–1[6] at 4–376, is identical to an indictment of the general rule that a shareholder cannot be held liable for the acts of the corporation. It is no more "unfair" to hold a shareholder immune from personal liability due to recognition of corporate separation than it is to rule that a shareholder is not amenable to suit in an out-of-state court for the same reason. Because the law does not deem "unfair" the rule that a shareholder is not liable beyond the extent of its investment if the corporation is not undercapitalized or maintained as a sham, it is likewise not unfair to say that the same shareholder is also not subject to the jurisdiction of a foreign sovereign.[2]

No one would seriously argue that an individual shareholder could, consistent with due process, be required to defend suit in a distant state merely because the corporation does business or committed torts there (assuming, of course, that the corporation is not the individual's alter ego). *See Shaffer v. Heitner*, 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977) (mere ownership of property held insufficient to assert jurisdiction over property owner; "it strains reason ... to suggest that anyone buying securities in a corporation formed in [the forum state] 'impliedly consents' to [be subject to the jurisdiction of the forum state] on any cause of action." (citation and quotation omitted)). And yet the same due process guarantees should protect the corporate, as well as the individual, shareholder.

[C]orporate defendants are entitled to defend their status as real legal entities ...

in a forum with which they themselves have sufficient contacts to subject them to service of process.... They have, as much as any other defendant, a constitutionally protected liberty interest in "not being subject to the binding judgments of a forum with which [they have] established no meaningful 'contacts, ties, or relations.'" *Burger King* [*Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985)].

*Home–Stake Prod. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1021 (10th Cir.1990).

The Court does not suggest, however, that any one state's principles of traditional alter ego analysis are mandated by due process, or that the federal judiciary should seek to articulate general principles of veil-piercing for jurisdictional purposes. Such an undertaking would be contrary to the Supreme Court's admonition to refrain from formulations of a federal common law. *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The law of the forum state applies, as discussed. If the state law of the forum dictates characterizing a given subsidiary corporation as a distinct legal entity, then due process is violated if a court, solely by virtue of the subsidiary's presence, exercises *in personam* jurisdiction over the parent corporation notwithstanding.

■ Nor should this opinion be construed as holding that alter ego principles constitute the totality of the due process analysis. Other facts, aside from ownership of a subsidiary corporation, may indicate that the parent corporation has minimum contacts with the forum state. The Court seeks only to dispel the notion that the forum state's corporate law is utterly irrelevant to the analysis. At a minimum, due process renders constitutionally infirm any attempt to hold a shareholder, whether an individual or a corporation, subject to the personal jurisdiction of an out-of-state forum by the mere fact that the corporation in which that shareholder has invested does business there. Before the parent company can be haled into an out-of-state court solely by virtue of the acts of its subsidiary,

---

**2.** Also troubling is Moore's "immune from suit" language. A parent corporation is "immune from suit" only in those jurisdictions with which

it has no minimum contacts. In this case, for example, CIGNA is clearly subject to the jurisdiction of the Delaware and Pennsylvania courts.

due process requires that the plaintiff must make at least a *prima facie* showing that application of the forum state's rules of corporate law would result in piercing the corporate veil or imposing liability through agency principles.[3]

In conclusion, CIGNA has carefully maintained corporate separateness in accordance with traditional rules of New Mexico corporate law. Due process mandates that the subsidiary companies cannot be the basis for asserting *in personam* jurisdiction over CIGNA. As CIGNA otherwise lacks independent minimum contacts with New Mexico, Plaintiffs' claims against CIGNA are dismissed.

Wherefore,

**IT IS ORDERED, ADJUDGED AND DECREED** that Defendant CIGNA Corporation's motion to dismiss for lack of personal jurisdiction be, and hereby is, granted.

---

3. With respect to the requisite *prima facie* showing, the Plaintiffs' allegations in the complaint are taken as true if the Defendant does not contest the allegations with affidavits or other materials. *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir.1984), *cert. denied*, 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985). Moreover, the Court resolves all factual disputes raised by conflicting affidavits in Plaintiffs' favor. *Id.* In short, Plaintiffs seeking to assert *in personam* jurisdiction over a parent corporation predicated solely on a subsidiary's activities need only make a colorable claim that the subsidiaries are alter egos or agents, and then only if Defendant submits sufficient proof of corporate separateness.