**ALBUQUERQUE FACILITY, LLC, a California limited liability company, Plaintiff,**

**v.**

**Kraig DANIELSON, Corban Abq. V, LLC, a Virginia limited liability company, Corban Financial Group, LLC, a Virginia limited liability company, Corban Capital Partners, a division of Corban Financial Group, and Corban Capital II, a Virginia limited liability company, Defendants.**

No. CIV 15-01033 RB/LF

United States District Court, D. New Mexico.

Filed April 4, 2016

926

David H. Stotts, Albuquerque, NM, for Plaintiff.

Corban Abq V LLC, Albuquerque, NM, pro se.

Douglas R. Vadnais, Spencer L. Edelman, Modrall, Sperling, Roehl, Harris, & Sisk, PA, Albuquerque, NM, for Defendants.

ROBERT C. BRACK, UNITED STATES DISTRICT JUDGE

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Kraig Danielson's Motion to Dismiss Complaint for Lack of Personal Jurisdiction and Memorandum in Support filed on November 12, 2015. (Doc. 6.) Jurisdiction arises under 28 U.S.C. ¶ 1331.

Having considered the submissions of counsel and relevant law, the Court will **GRANT** Defendant's motion to dismiss.

## I. Procedural Background

This case involves a business deal gone awry. Plaintiff, Albuquerque Facilities, LLC (Abq Fac), borrowed money from a third party, Baltz Family Partners, Ltd. (Baltz), to acquire a commercial property in Albuquerque, New Mexico. (Doc. 1, Ex. A (Compl.) at ¶ 12.) Thereafter, Abq Fac approached Corban Financial Group, LLC (Corban Financial), through its Corban Capital Partners division, to refinance the loan from Baltz. (*Id.* at ¶ 15.) Corban Financial agreed to make the loan to Abq Fac, but in the process of funding the loan and paying off Baltz, the parties got crosswise. The parties have been involved in two distinct lawsuits in state court. (*Id.* at ¶¶ 15, 28, 30–37.) Baltz was the original plaintiff in the First State Lawsuit; Corban voluntarily substituted itself as plaintiff when it refinanced the loan. (*See* Doc. 10 at 2, Ex. A.)

After the parties' deal went south, Plaintiff filed the Second State Lawsuit in the Second Judicial District Court, County of Bernalillo, State of New Mexico alleging (1) conversion; (2) malicious abuse of process; (3) fraudulent transfers; (4) piercing the corporate veil; and (5) punitive damages. (Compl. ¶¶ 45–93.) This case results from the removal of the Second State Lawsuit. (Doc. 1 at 1.) Defendant Danielson then filed this motion to dismiss, seeking dismissal of Defendant Danielson for lack of personal jurisdiction. (Doc. 6.)

## II. Statement of Facts [1]

Baltz, a Colorado limited liability partnership, filed the First State Lawsuit in the Second Judicial District Court, seeking foreclosure of a note and mortgage Baltz held from Abq Fac, a California limited liability company, as borrower. (Compl. ¶ 12.) Corban Financial, through its Corban Capital Partners division, contracted with Abq Fac to refinance the loan evidenced by a note, and the two parties entered into a "Summary of Proposed Terms and Conditions" (the Term Sheet) on June 17, 2013. (*Id.* at ¶ 14, Ex. A.) Mr. Danielson, in his capacity as "Managing Director" of Corban Capital Partners, signed the June 17, 2013 letter confirming the deal, and his signature line also appears on the Term Sheet. (*See id.* Ex. A at 10, Ex. B.) After Corban Financial and Abq Fac signed the Term Sheet, Corban Financial formed a special purpose entity, Corban Abq. V, LLC (Corban Abq. V), to purchase the note and mortgage from Baltz at a price substantially lower than what Baltz sought in the First State Lawsuit. (*Id.* at ¶ 17; Doc. 10 at 2.) Mr. Kraig Danielson became the Managing Member of Corban Abq. V. (*See* Doc. 10, Ex. G-A at ¶ 1.) The Second Judicial Court entered an order on stipulation of the parties substituting Corban Abq. V as plaintiff in the First State Lawsuit. (*Id.* at Ex. A.)

After the parties signed the Term Sheet and Corban Abq. V purchased the note from Baltz, Abq Fac negotiated a separate agreement with an outside company to sell the building encumbered by the mortgage. (Compl. ¶ 18.) Abq Fac would use the funds from the sale of the building to pay off the note and other amounts owed to Corban Abq. V. (*Id.*) Abq Fac and Corban Abq. V agreed to conduct a simultaneous closing. (*Id.* at ¶ 20.) In the simultaneous closing, Abq Fac would close the sale of the building, remitting all proceeds ($4,050,550.47) to Corban Abq. V, giving Abq Fac a "discount" of $275,766.99 from the parties' original agreement (*see id.*, Ex. C ("July 25, 2013 Letter from Mr. Danielson to Abq Fac")); Corban Abq. V would use the proceeds to buy the note and mortgage from Baltz; and Corban Abq. V would accept the proceeds as full and final payment of all amounts due under the note and mortgage. (*Id.* at ¶ 21.) Relying on this agreement, Abq Fac closed the sale of the building and remitted the money to Corban Abq. V. (*Id.* at ¶ 22.) Corban Abq. V used this money to buy the note and mortgage from Baltz, extinguishing Abq Fac's debt to Baltz. (*Id.*) Corban Abq. V then released the mortgage. (*Id.*)

Due to the simultaneous closing, no Corban entity ever funded money under the Term Sheet as originally contemplated by the parties. (*Id.* at ¶ 23.) Because Abq Fac was able to pay the entire amount of the note and mortgage immediately, Corban Financial lost the opportunity to earn interest under the loan. (*Id.* at ¶ 24.) Instead, the parties agreed that Abq Fac would pay certain Termination Expenses: (1) the "Breakup Fee" referred to in the Term Sheet, (2) $30,000 of the Due Diligence Deposit referred to in the Term Sheet, and (3) approximately $3,000 in attorney's fees incurred by Corban Abq. V. (*Id.*)

The court in the First State Lawsuit had appointed a Receiver to manage funds subject to the litigation, and at the time of the simultaneous closing, the Receiver held a substantial amount of money collected as

---

1. The Court recites the facts in a light most favorable to Plaintiff as found in the Complaint (including exhibits) and in Plaintiff's response (including exhibits) to Defendants' motion to dismiss. While the terms of the contract itself are not at issue in Defendant's motion, the Court finds it helpful to recite the background of the parties' dispute in order to fully understand the jurisdictional issue.

rent from tenants in the building that Abq Fac sold. (*Id.* at ¶ 27.) One reason the parties agreed to substitute Corban Abq. V into the First State Lawsuit as plaintiff was to obtain these rents held by the Receiver. (*Id.*) Once Corban Abq. V received the Termination Expenses from the Receiver, it was Abq Fac's understanding that Corban Abq. V would then distribute any overage from the rents to Abq Fac. (*Id.* at ¶ 27; *see also* Doc. 10, Ex. H-A (July 30, 2013 correspondence between Mr. Danielson and Mr. Carnahan, Abq Fac's loan broker).)

In October, 2013, Corban Abq. V filed a Motion for Disbursement of Proceeds from Receiver in the First State Lawsuit, ostensibly to collect the Termination Expenses, (Compl. ¶ 30; Doc. 10, Ex. G.) Corban Abq. V supported its motion with an affidavit from Mr. Danielson, who gave details of the parties' agreement on Termination Expenses. (Doc. 10, Ex. G-A.) Mr. Danielson testified that the Termination Expenses were still "due and owing." (*Id.* at ¶ 9.) Corban Abq. V did not disclose to Abq Fac, however, that the Receiver had already distributed to it an amount in excess of the Termination Expenses. (Compl. ¶ 28.) The Receiver responded to the motion and also filed a Motion for Clarification of Receiver's Duties, stating that the "Receiver does not have sufficient information to determine whether there remains any amount owing[,]" or whether Corban Abq. V "is entitled to any portion of the funds . . . ." (*Id.* at ¶ 31.) Corban Abq. V responded to the Receiver's motion, also seeking an order authorizing payment to Corban of the rents generated up to the time the building was sold or the Termination Expenses. (*Id.* at ¶ 32; Doc. 10, Ex. B, "Plaintiff's Response to Receiver's Motion for Clarification of Duties.") According

to the motion and Mr. Danielson's affidavit in support of the motion, Abq Fac still owed Corban Abq. V a "deficiency balance" from the original Term Sheet, including interest that "continues to accrue at the rate of 24% per annum." (*See* Compl. ¶ 34; Doc. 10, Ex. B at ¶ 5, Ex. B-A at ¶¶ 8–11 ("Affidavit of Kraig Danielson in Support of Response to Receiver's Motion for Clarification").)

Abq Fac asserts that this claim directly contradicts Corban Abq. V's July 25, 2013 agreement with Abq Fac, when Corban agreed to accept $4,050,550.47 as full and final payment. (*See* Compl., Ex. C.) The amount Mr. Danielson and Corban Abq. V claim in their response is the exact same amount they had promised to Abq Fac as a "discount." (*Id.*; Doc. 10, Ex. B-A at ¶ 11.) Abq Fac contends that Mr. Danielson and Corban Abq. V made this false claim to the Second Judicial District Court in bad faith and with knowledge that the claim was meritless. (Compl. ¶¶ 37–38, 42.) Abq Fac was not given proper notice of Corban Abq. V's claim to a deficiency,[2] and as a result, the court granted Corban Abq. V's request for a disbursement. (*Id.* at ¶¶ 40–41.) Abq Fac asserts that Mr. Danielson and Corban Abq. V continued to assure Abq Fac that it would receive the proceeds the parties had agreed to. (*Id.* at ¶¶ 42–43.) Abq Fac filed a counterclaim and third party complaint in the First State Lawsuit and a separate Second State Lawsuit (the lawsuit Defendants removed to this Court). (*Id.* at ¶ 44.) The Second Judicial Court has since ordered Corban Abq. V to return the money to the Receiver. (*See* Doc. 10, Ex. F.)

### III. Legal Standard

 "A motion to dismiss is an appropriate procedural vehicle for resolving per-

---

**2.** Abq Fac asserts that it had not yet entered its appearance in the First State Lawsuit when the court entered the order disbursing the proceeds to Corban Abq. V. (Doc. 10 at 10.)

sonal jurisdiction and venue issues." *Smith v. Cutler*, 504 F.Supp.2d 1162, 1165 (D.N.M.2007) (citing Fed. R. Civ. P. 12(b)(2) & (3)). "Affidavits, depositions, answers to interrogatories, and similar evidentiary matter may be presented and are freely considered on a motion attacking jurisdiction." *Id.* (*citing Sunwest Silver, Inc. v. Int'l Connection, Inc.*, 4 F.Supp.2d 1284, 1285 (D.N.M.1998) (internal citation omitted); *Jones v. 3M Co.*, 107 F.R.D. 202, 204 (D.N.M.1984) (internal citations omitted)).

■■■ Plaintiffs carry "the burden of establishing personal jurisdiction over" defendants. *Id.* (*citing Kuenzle v. HTM Sport–Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir.1996) (internal citation omitted)). Where the Court determines jurisdiction prior to trial "on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing.'" *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir.1995) (quoting *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir.1988) (internal citations omitted)). The Court is to "resolve all factual disputes in favor of the plaintiff . . . ." *Id.* (citing *Rambo*, 839 F.2d at 1417 (internal citations omitted)).

■■■ "Personal jurisdiction is established by the laws of the forum state and must comport with constitutional due process." *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Can., Ltd.*, 703 F.3d 488, 492 (10th Cir.2012) (citing *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir.2000) (internal citation omitted)). "New Mexico's long-arm statute, N.M. Stat. Ann. ¶ 38–1–16 (1971),[3] 'is coex-tensive with constitutional limitations imposed by the Due Process Clause.'" *Id.* at 492–93 (internal citations omitted); *see also Smith*, 504 F.Supp.2d at 1166 ("New Mexico law merges the analysis of whether a defendant has transacted business or committed a tortious act within New Mexico with the inquiry regarding whether such activities constitute minimum contacts sufficient to satisfy due process concerns.") (internal citations omitted).

■■■ "The Court's jurisdiction may rest on specific or general personal jurisdiction." *Fabara v. GoFit, LLC*, 308 F.R.D. 380, 394 (D.N.M.2015), as *amended* (Aug. 20, 2015). At issue in this motion is specific jurisdiction. To establish specific jurisdiction, the plaintiff must show that the defendant has "sufficient minimum contacts with the forum state, and jurisdiction over the defendant cannot offend 'traditional notions of fair play and substantial justice.'" *Fireman's Fund Ins. Co.*, 703 F.3d at 493 (quoting *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cty.*, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). "The minimum contacts must show that 'the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Id.* (quoting *Asahi Metal Indus. Co., Ltd.*, 480 U.S. at 109, 107 S.Ct. 1026 (internal citations omitted)). "The contacts with the forum must make being sued there foreseeable so that the defendant could 'reasonably anticipate' the suit. *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (internal citations omitted)). "The litigation must 'result[ ]

**3.** The statute provides in relevant part:

Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:

(1) the transaction of any business within this state; . . .

(3) the commission of a tortious act within this state . . . .

N.M. Stat. Ann. ¶ 38–1–16 (1971).

from alleged injuries that arise out of or relate to those activities.'" *Id.* (quoting *Intercon, Inc.*, 205 F.3d at 1247 (internal citations omitted)).

## IV. Discussion

■■■ A court decides whether a defendant has minimum contacts with the forum state by examining "the particular facts of [the] case." *Purple Onion Foods, Inc. v. Blue Moose of Boulder, Inc.*, 45 F.Supp.2d 1255, 1257 (D.N.M.1999) (internal citations omitted)). In support of his motion to dismiss, Mr. Danielson points to the following undisputed facts: (1) none of the parties are New Mexico residents; (2) no New Mexico resident claims to have suffered an injury; and (3) there is no evidence to support general jurisdiction over Mr. Danielson. (Doc. 6 at 3–4.)

The facts establish two relevant connections to New Mexico: (1) the building subject to the mortgage that Corban Abq. V purchased from Baltz is located in New Mexico (*see id.* at 4); and (2) Corban Abq. V voluntarily substituted itself as plaintiff in the First State Lawsuit, which was filed in a New Mexico court (Doc. 10 at 2, Ex. A). Plaintiff raises one main legal argument in support of its position: because Mr. Danielson knowingly submitted at least two affidavits giving false information in order to mislead the New Mexico court in the First State Lawsuit, and because he directed and controlled the conduct of Corban Abq. V in filing misleading briefs, he has committed a tort in the forum state. (*See* Doc. 10 at 7–8, 17–19, Exs. B-A, G-A.) This conduct, Plaintiff asserts, falls under New Mexico's long-arm statute and is sufficient to subject Mr. Danielson to personal jurisdiction in the state. (*See* Doc. 10.) Mr. Danielson contends that he was only involved in the lawsuit in his capacity as an officer of Corban Abq. V: he was not a named party, he signed affidavits only in his capacity as Managing Member, and he

did not file any documents or pleadings in the state lawsuit. (Doc. 13 at 3.)

### A. Alter Ego Theory

■■■ Plaintiff brings a claim for "piercing the corporate veil" to hold Mr. Danielson personally liable for his conduct. (Compl. ¶¶ 76–90.) "[L]iability and jurisdiction are different inquiries[,]" however, *Alto Eldorado P'ship v. Amrep*, 138 N.M. 607, 124 P.3d 585, 592 (Ct.App.2005), and while Mr. Danielson may be liable for his conduct, liability for misconduct does not automatically mean that he is subject to this Court's jurisdiction. *See Marine Midland Bank v. Miller*, 664 F.2d 899, 902 (2d Cir.1981) (cited in *Smith*, 504 F.Supp.2d at 1169). "The fiduciary or corporate shield doctrine prevents a state from exercising personal jurisdiction over individual officers or directors of a corporation based on actions they have taken in a fiduciary capacity for the corporation." *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 131 N.M. 772, 42 P.3d 1221, 1237 (Ct.App.2001) (citing *Allen v. Toshiba Corp.*, 599 F.Supp. 381, 384 (D.N.M.1984) (internal citations omitted)). The New Mexico Court of Appeals has found, though, that because "New Mexico exercises personal jurisdiction to the full extent the constitution allows, the fiduciary shield doctrine is not constitutionally required in New Mexico." *Id.* (citing *United Nuclear Corp. v. Gen. Atomic Co.*, 91 N.M. 41, 570 P.2d 305, 306 (1977)). "An employee of a corporation subject to personal jurisdiction will not be shielded from jurisdiction if he or she is a 'primary participant[ ]' in [the] alleged wrongdoing intentionally directed'" at the forum state, which activities formed the bases of the jurisdiction over the corporation. *Id.* (quoting *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); citing *In re Application to Enforce Admin. Subpoenas Duces Tecum of the*

*Sec. & Exch. Comm'n v. Knowles,* 87 F.3d 413, 418 (10th Cir.1996)).

Defendants do not argue that personal jurisdiction is improper over any of the Corban entities. Indeed, they substituted themselves as plaintiffs in the First State Lawsuit, voluntarily submitting themselves to jurisdiction in New Mexico. It is only Mr. Danielson who disputes personal jurisdiction on the basis that his involvement in the First State Lawsuit was only in his capacity as an officer of Corban Abq. V. The issue before the Court, then, is whether Mr. Danielson was "a primary participant in the alleged wrongdoing intentionally directed" at the forum state ...." *Id.* (citations and brackets omitted).

Here, the alleged wrongdoing was the misuse of the legal process by filing false and misleading information to the state court in order to accomplish an illegitimate end. (*See* Compl. ¶¶ 51–53.) Mr. Danielson argues that his only involvement was as an officer of Corban Abq. V. (Doc. 13 at 3.) Plaintiff's pleadings, affidavits, and other supporting documents, however, paint a different picture of Mr. Danielson's involvement. Plaintiff asserts that Mr. Danielson controlled each of the Corban Entities, and that he operated them to serve his own purposes. (Compl. ¶¶ 76–77.) Consequently, if Corban Abq. V committed a tort in filing false and misleading briefs in the First State Lawsuit, Plaintiff argues that such conduct was at the direction of—and can be attributed to—Mr. Danielson in his personal capacity. (*See id.* ¶ 80–89.)

■■■■ Plaintiff is effectively asking the Court to apply the "alter ego" doctrine to find that exercising jurisdiction over Mr. Danielson is proper. Plaintiff "cannot prevail on [its] alter ego claims against [Mr. Danielson] without proving" that Corban Abq. V was his instrumentality.[4] *Home-Stake Prod. Co. v. Talon Petroleum, C.A.,* 907 F.2d 1012, 1018 (10th Cir.1990). In *Alto Eldorado Partnership,* the New Mexico Court of Appeals found that "[a] prima facie showing of instrumentality or domination should be sufficient to establish the minimum contacts necessary for jurisdiction ...." 124 P.3d at 599. To prove "instrumentality or domination, the plaintiff must show that... 'there is such unity of interest and ownership that the individuality or separateness of the [entities] has ceased.'" *Id.* at 598 (quoting *Jemez Agency, Inc. v. CIGNA Corp.,* 866 F.Supp. 1340, 1344 (D.N.M.1994) (internal citation omitted)).

■■■ The Tenth Circuit has found that a corporation may be found "to be a mere instrumentality of an individual if (1) the corporation is undercapitalized, (2) without separate books, (3) its finances are not

---

4. The Tenth Circuit went on to say that the plaintiff must also prove that the defendant chief executive officer had used the "instrumentalities... as part of 'a design or scheme to perpetrate fraud.'" *Home-Stake Prod. Co. v. Talon Petroleum, C.A.,* 907 F.2d 1012, 1018 (10th Cir.1990) (quoting *Hulme v. Springfield Life Ins. Co.,* 565 P.2d 666, 670 (Okla.1977) (internal citation omitted)). This second prong does not apply here for two reasons: first, the Tenth Circuit was examining a case using Oklahoma law. *See id.* Second, and more importantly, the New Mexico Court of Appeals has since held that plaintiffs need not prove all three elements required to pierce the corporate veil "in order to hale a foreign corpo-

rate parent into court ...." *Alto Eldorado P'ship v. Amrep,* 138 N.M. 607, 124 P.3d 585, 598 (Ct.App.2005).

To "pierce the corporate veil," New Mexico courts require plaintiffs to prove three elements: "(1) a showing of instrumentality or domination; (2) a demonstration of improper or fraudulent purpose for incorporation; and (3) proximate causation." *Id.* (quoting *Jemez Agency, Inc. v. CIGNA Corp.,* 866 F.Supp. 1340, 1343–44 (D.N.M.1994) (internal citation omitted)). The first element—showing instrumentality or domination—is also known as the "alter ego" theory. *Id.* (citing *Jemez Agency, Inc.,* 866 F.Supp. at 1344).

kept separate from individual finances, individual obligations are paid by the corporation or vice versa, (4) corporate formalities are not followed, or (5) the corporation is merely a sham." *Home–Stake Prod. Co.*, 907 F.2d at 1018 (citing *Lakota Girl Scout Council, Inc. v. Havey Fund–Raising Mgmt., Inc.*, 519 F.2d 634, 638 (8th Cir. 1975); citing *Fish v. East*, 114 F.2d 177, 191 (10th Cir.1940)). After examining these factors, the Court finds that Plaintiff has failed to come forward with factual allegations and supporting documents sufficient to make out a prima facie case on its alter ego claim.

 Here, Plaintiff has demonstrated that Mr. Danielson was not just the Managing Member of Corban Abq. V, he is also (at least) the Managing Director of Corban Capital Partners. (*See* Compl., Exs. A, B; Doc. 10 Ex. H-A.) The New Mexico Supreme Court has said that where corporations share common officers or directors, that is one piece of evidence (though it is not enough in itself) that can show too close a relationship between the corporations. *Scott v. AZL Res., Inc.*, 107 N.M. 118, 753 P.2d 897, 900–01 (1988) (citing J.A. Bryant, Jr., Annotation, *Corporate Liability–Subsidiary*, 38 A.L.R.3d 1102, 1111 (1971)). In *Home–Stake Production Company*, the Tenth Circuit found it relevant that "final decisionmaking authority" always rested in the defendant's family. 907 F.2d at 1018. It would appear that Mr. Danielson also has some kind of decisionmaking authority in at least two of the Corban entities, but it is unclear whether he is the "final" decision-maker.

The *Scott* court also considered it relevant that corporations were undercapitalized or commingled funds. 753 P.2d at 901. Here, Plaintiffs have alleged, through the affidavit of Mr. Carnahan, that Corban Abq. V is a "special purpose entity," formed with the express and sole purpose of purchasing the note and mortgage from Baltz. (Doc. 10, Ex. H at ¶ 9.) Special purpose entities, according to Plaintiff, "typically own no assets other than the asset they were form[ed] to own." (*Id.*) Plaintiff is concerned that Corban Abq. V has transferred its assets to Mr. Danielson or some other entity, and as such will not have assets to respond to a judgment against it. (Doc. 10 at 16–17.) Plaintiff has not, however, demonstrated that Corban Abq. V is undercapitalized or has commingled funds with the other Corban entities.

This is the extent of Plaintiff's pleadings, affidavits, and supporting documents at this point. Plaintiff's case is scant, and the Court finds the allegations insufficient to establish a prima facie case that Mr. Danielson uses the Corban entities (at least Corban Abq. V and Corban Capital Partners) as his instrumentalities. The Court will not preclude Abq Fac from conducting limited discovery on the alter ego claim, but the Court will not keep Mr. Danielson as a Defendant without allegations sufficient to establish a prima facie case that he is subject to the Court's jurisdiction. If Abq Fac uncovers further support for their theory that Mr. Danielson uses Corban entities as his instrumentalities, the Court will consider adding Mr. Danielson back in as a Defendant at that time. Plaintiff should be mindful that the Court will rely heavily on the factors courts have found sufficient to exercise personal jurisdiction in cases such as *Home–Stake Production Company*, 907 F.2d at 1018–19, *Lakota Girl Scout Council, Inc.*, 519 F.2d at 638, and similar.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 6) is GRANTED.